COMMISSIONER OF CORRECTION, petitioner.

Hampden. April 6, 1949. — July 5, 1949.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Defective Delinquent. Mental Health.*

Section 115 of G. L. (Ter. Ed.) c. 123, as appearing in St. 1947, c. 684, § 2, did not require that a Probate Court forthwith discharge a person from confinement as a defective delinquent merely because two psychiatrists appointed by the commissioner of mental health pursuant to the statute had examined him and had reported to the commissioner of correction that he was "not a mental defective": the court was bound to determine his status in an independent judicial manner; and, having found on evidence other than the conclusion of the psychiatrists that the status as a defective delinquent still remained, the court properly refused a discharge.

PETITION, filed in the Probate Court for the county of Hampden on April 29, 1948.

The case was heard by *Macauley,* J.

*L. J. Gordon,* (*J. Richmond* with him,) for the appellant.

No argument nor brief in opposition.

WILLIAMS, J. This is a petition by the commissioner of correction under G. L. (Ter. Ed.) c. 123, § 115, as appearing in St. 1947, c. 684, § 2, for the discharge of Clarence R. Gilbert who, on October 1, 1947, was confined as a defective delinquent at the State farm at Bridgewater under a commitment by the District Court of Springfield on October 29, 1943. Said § 115 provides that all persons confined on October 1, 1947, as defective delinquents shall be examined forthwith by two psychiatrists appointed by the commissioner of mental health and that the reports of such examinations shall be transmitted to the commissioner of correction. Where "such examination discloses that the person examined is not mentally defective immediate steps shall be taken by the commissioner of correction in the probate court to secure

the termination of his defective delinquent status." The petition of the commissioner was dismissed, after hearing, by a judge of the Probate Court for Hampden County. The case is here on the appeal of Gilbert from this dismissal.

In a report of the material facts the judge found that Gilbert was born in Springfield on October 6, 1928. Since he was thirteen years of age he has committed various offences, including breaking and entering and larceny. In 1942 he "committed unnatural acts and sexual perversions upon the body" of an eight year old boy, and admitted that three times before he "did similar acts." In 1943 he committed sodomy and another crime against nature upon the body of the same boy. Because of resistance he choked the boy with a rope around his neck and a cloth stuffed in his mouth. The boy was badly beaten, his "legs, back and buttocks were covered with scratches and cuts, and his fingers were burned somewhat by a lighted torch." When examined by a psychiatrist, Dr. Olive A. Cooper, Gilbert said, "When I get mad, everything goes black and I get very mad. Things go black out on me I get so mad." The psychiatrist reported to the District Court that Gilbert's "sexual sadistic drives make him a menace to children and it is my firm conviction that there will be a recurrence of these previous episodes." While at Bridgewater his conduct has been good. The psychiatrists appointed by the commissioner of mental health reported "that the psychiatric examination made by them on April 10, 1948, revealed that he was 'pleasant and coöperative; history indicates that he was nervous and slow in maturing; makes good impression at this time; fair grasp and insight; no psychoses; intelligence is above the feeble-minded level,'" and that "he can read and write — shows fair understanding of world news; also figures simple problems correctly; that the psychometric ratings of the patient that they had were 'Stanford in 1944 gave I. Q. of 85; Stanford in 1942 gave I. Q. of 74' . . .. In our opinion . . . Clarence R. Gilbert is not a mental defective."

After quoting the above report, the judge states: "The

statements in the previous paragraph are made as findings of fact if the Supreme Judicial Court in construing the statute mentioned in the first paragraph of this report determines that the only duty of the Probate Court is to terminate the defective delinquent status of the person if the two psychiatrists appointed under the statute report to the commissioner of correction that the person concerned is not a 'mental defective.' If the Supreme Judicial Court determines that the statute requires the Probate Court to examine all the facts in the case and the same factors that the courts under G. L. (Ter. Ed.) c. 123, § 113, must consider to commit a person to the defective delinquent department, the opinion of the two psychiatrists that Clarence R. Gilbert is not 'mentally defective' is not a finding of fact made by this court." We understand the judge to mean that, if he is bound by the conclusions of the psychiatrists, he must necessarily find that Gilbert is not a mental defective, but, if not so bound, that on all the facts before him he does not so find.

An examination of Gilbert by Dr. Cooper having been made at the request of the judge, he found as a fact, based upon her report, "that even though the record of Clarence R. Gilbert at Bridgewater attested to improvement yet there was an unlikelihood that the basic patterns in social behavior of this individual have changed markedly during the four year period of incarceration." Based on a supplemental report of the two psychiatrists, also made at the request of the judge, he found further that "he [Gilbert] is a bad social problem because of the circumstances of his sexual misconduct" and "that the outlook is dubious for his adjustment in the community."

The judge concluded his findings as follows: "Intelligence quotient tests are not standards to determine whether or not one is defective by reason of being possessed of sadistic lusts. Considering that 'a defective delinquent is one who displays a permanent mental defect, sometimes in scholastic educability, but always in judgment and moral sense, coupled with strong, vicious or criminal propensities on which pun-

ishment has little or no deterrent effect, and who requires care, supervision, and control for the protection of others,' I find in so far as it is a matter of fact and based on subsidiary findings of fact hereinabove set forth that Clarence R. Gilbert is a defective delinquent and his status as such still remains. I further find that the termination of his status as a defective delinquent would effect his absolute release without supervision by parole authorities or otherwise; and such release would be inimical to the public."

The appellant contends (in his brief) that the "report from two psychiatrists is a condition precedent, and on its existence the court must automatically declare the status of defective delinquency terminated." Upon the filing of the report of the psychiatrists and its transmission to the commissioner of correction, said § 115 makes it imperative that he shall take "immediate steps" to obtain a termination by the Probate Court of the defective delinquent status. General Laws (Ter. Ed.) c. 123, § 118, as appearing in St. 1947, c. 684, § 3, which provides for periodic reëxamination of persons committed as defective delinquents, states in somewhat similar terms that, on a report by two psychiatrists, a defective delinquent "found by such examination not to be mentally defective shall be taken before the probate court by the commissioner of correction for discharge from defective delinquent status."

Both sections relate to action to be taken by the commissioner and may be considered together. They do not purport to instruct the court as to what action it shall take, although it is clear that the purpose of these sections is to provide a means for the discharge of those committed as defective delinquents. A conclusion that the Legislature intended to make affirmative action by the Probate Court mandatory on the presentation to it by the commissioner of the psychiatrists' report is to be avoided unless clearly required by the language of the statute. *Keenan, petitioner*, 310 Mass. 166, 173. *Swift* v. *Registrars of Voters of Quincy*, 281 Mass. 271, 282. In *Opinion of the Justices*, 251 Mass. 569, 615, it is said, "There is established by art. 30 of the Declaration

of Rights a sharp, mandatory and unescapable division between the executive, legislative and judicial departments of government, and an absolute prohibition against each one from exercising functions of either of the others. In view of this command of the Constitution, it is beyond the power of the Legislature to require any court merely to register a mechanical approval of the doings of an administrative or executive committee, without examination as to the legal merits of such doings. Courts in reaching decisions are bound to exercise an independent judicial function. Simply to set in motion machinery perfunctorily and inevitably leading to a specified final judgment, without first exercising an untrammelled decision in accordance with established constitutional and legal principles, would not be judicial work. A court cannot be made an automatic adjunct of an administrative board. Judicial work to be performed in a judicial manner alone can be required of or performed by courts." If said §§ 115 and 118 were construed in accordance with the contention of the appellant, they would constitute an unconstitutional interference by the Legislature with the exercise by the court of its proper judicial function. See *Meunier's Case*, 319 Mass. 421. In our opinion these sections do not restrict the court in the receipt of evidence, the finding of facts, and the entering of such decree as will enforce the rights of the parties according to the facts properly found. *McNicol's Case*, 215 Mass. 497, 502. *DePietro's Case*, 284 Mass. 381, 384.

Whether the appellant was a defective delinquent at the time of the hearing in the Probate Court was a question of fact to be determined by the court upon all the evidence before it. See *Cogan* v. *Cogan*, 202 Mass. 58, 60. The judge found that the appellant was a defective delinquent. According to the familiar rule his finding should not be set aside unless clearly wrong. The definition of "defective delinquent" is found in G. L. (Ter. Ed.) c. 123, § 113, as amended by St. 1947, c. 684, § 1, wherein it is stated that to warrant the commitment of a person as a defective delinquent it must be found that the "defendant" is "mentally

defective," that "after examination into his record, character and personality . . . he has shown himself to be an habitual delinquent or shows tendencies toward becoming such and that such delinquency is or may become a menace to the public." The evidence is not reported but the findings of material facts show the appellant to have been in the past an habitual delinquent. From these facts a conclusion is warranted that his delinquency will continue and constitute a menace to the public. In reference to a mental defect the judge was not in error in finding that pyschometric rating is not the only element to be considered in determining the variance from normal mentality. Without passing on the accuracy of the judge's definition of a defective delinquent, we are of opinion that the characteristics therein mentioned are those which might well be given consideration by a fact finding tribunal. (See definition of "psychopathic personality" in G. L. [Ter. Ed.] c. 123A, § 1, as inserted by St. 1947, c. 683.)

Except for the above mentioned contention that the judge was limited by the statute to a consideration of the psychiatrists' original reports, no question of evidence has been raised. We find no error in the conclusion of the judge and the dismissal of the petition.

*Decree affirmed.*