COMMISSIONER OF PUBLIC HEALTH *vs*. THE BESSIE M.
BURKE MEMORIAL HOSPITAL & another[1];
WINCHENDON HOSPITAL, INC., intervener.

Suffolk.    October 10, 1974. — February 5, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, HENNESSEY, & KAPLAN, JJ.

*Constitutional Law,* Equal protection of laws, Legislation favoring individual, Separation of powers of government.

---

[1] The city of Lawrence.

366 Mass. 734                                          735

Commissioner of Public Health *v.* The Bessie M. Burke Memorial Hospital.

A legislative enactment that, after an adverse ruling by the Commissioner of Public Health, directed the commissioner to make a determination of need and to approve, pursuant to St. 1971, c. 1080, a particular hospital's application for permission to renovate existing facilities, conferring exemption from the requirements of St. 1971, c. 1080, only upon the named hospital, did not violate art. 10 of the Massachusetts Declaration of Rights or the equal protection clause of the Fourteenth Amendment to the United States Constitution, because it did no specific injury to any other person or entity. [741-745]

A legislative enactment that, after an adverse ruling by the Commissioner of Public Health, directed the commissioner to make a determination of need and to approve, pursuant to St. 1971, c. 1080, a particular hospital's application for permission to renovate existing facilities, did not violate art. 30 of the Massachusetts Declaration of Rights by improperly intruding upon the functions of the executive branch of government because the enactment did not injure any private rights and was not contrary to the welfare of the community. [745-750]

BILL IN EQUITY filed in the Supreme Judicial Court for the county of Suffolk on December 20, 1973.

The case was reserved and reported by *Hennessey*, J.

*Kenneth A. Behar*, Assistant Attorney General (*David W. Rosenberg* with him) for the Commissioner of Public Health.

*Edward J. Grimley, Jr.*, Assistant City Solicitor, for The Bessie M. Burke Memorial Hospital & another.

*John L. Saltonstall, Jr.*, for Winchendon Hospital, Inc., intervener.

*John F. Donovan, Jr.*, for the House of Representatives, & *Albert S. Previte, Jr.*, pro se, amici curiae, submitted briefs.

KAPLAN, J. To prevent unnecessary expansion of health care facilities in the Commonwealth and encourage appropriate allocation of resources for health care purposes, legislation was passed forbidding substantial new construction of such facilities except upon application to the Department of Public Health and administrative "determination" of "need." The two hospitals involved in the present case each applied for a determination with respect to a desired construction project; the determination was unfavorable as to one hospital, and as to the other was favorable only in part. The Legislature then in each

instance enacted a statute which, without in terms repealing the general statute, in effect directed the department to make the determination that would enable the hospital to carry out its project. The question raised is whether such a direction by the Legislature, singling out a particular hospital for favorable treatment, encounters any constitutional obstacle. In more detail, the case is as follows.

The Bessie M. Burke Memorial Hospital (Burke Hospital), a municipal hospital of the city of Lawrence, has for some years been interested in renovating its facilities, and in October, 1970, the Department of Public Health indicated approval of the hospital's plan of renovation as a step, apparently, toward securing funding for the construction. Statute 1971, c. 596, was approved on August 5, 1971, authorizing the city to borrow up to $1,500,000 to finance the work, and the city thereupon approved the funding, called for bids, and on November 23, 1971, entered into a contract with a construction company. Evidently the city officials were not aware of the fact that St. 1971, c. 1080, had been enacted into law and become effective several days earlier, on November 15, 1971; when this came to their attention they suspended work under the contract.

Chapter 1080, entitled "An Act to prevent unnecessary expansion of health care facilities during the period ending [May 31, 1972]," required; as a condition of commencing construction of a new health care facility, or commencing construction renovating an existing facility, which in either case would call for a capital expenditure of $100,000 or more, that the Department of Public Health make a "determination" that there was a "need" therefor. The statute made provision for application, hearing, and reference of the proposal to certain agencies for comment, as predicates for the departmental determination which was to set forth reasons. Acknowledging that its planned construction was within the statute, Burke Hospital applied on December 29, 1971, for the necessary determination. The application was denied on April 11, 1972, by the department's public health council, which concurred in a negative recommendation of the Merrimack Valley Health Planning

366 Mass. 734                                        737

Commissioner of Public Health *v.* The Bessie M. Burke Memorial Hospital.

Council.[2] Regulations permitted an intradepartmental appeal, and such an appeal was taken by Burke Hospital by letter of May 5, 1972. On June 1, 1972, however, permanent legislation became effective — St. 1972, c. 776, constituting G. L. c. 111, §§ 25B-25G, and superseding the 1971 statute. As the new legislation established a health facilities appeals board as a board of review (see c. 776, § 1), Burke Hospital's appeal was forwarded to that board. But the board on December 20, 1972, remitted the appeal and others like it to the Commissioner, stating that it lacked jurisdiction to hear them because the determinations as to need were made before June 1, 1972.

The record does not disclose whether Burke Hospital took any further steps to secure favorable determination within the department. It did not seek judicial review of the negative determination.[3] Resort was had to the Legislature, which on October 17, 1973, enacted St. 1973, c. 923, as an emergency law. This states that, "[n]otwithstanding the provisions of . . . [St. 1972, c. 776], or any other contrary provision of law, the commissioner of public health is hereby authorized and directed to issue a certificate of need and a temporary hospital license[4] to the city of Lawrence for the continued operation of the Bessie M. Burke Memorial Hospital. . . . Said city of Lawrence is hereby authorized and directed to expend such sums of money as were authorized by . . . [St. 1971, c. 596] to remodel, reconstruct, enlarge, make extraordinary repairs to, re-equip and refurnish said Bessie M. Burke Memorial Hospital."

---

[2] The statement of "justification" criticized the types of services that would be provided at the renovated facility and stated that the design called for too many nurses' stations and the project cost was excessive. According to the statement, the facility after renovation would still be antiquated and largely nonfunctional.

[3] The temporary 1971 law had no express provision for such review. The permanent legislation provides in § 25E that a final decision of the health facilities appeals board shall be subject to judicial review under G. L. c. 30A, § 14 (State Administrative Procedure Act — appeals in adjudicatory proceedings), to the extent not inconsistent with other provisions of the same § 25E which deals with proceedings before the board.

[4] The power to license hospitals is vested in the department by G. L. c. 111, § 51, and issuance of an original license requires a determination of need.

The relevant bill (H. 7496) had been first returned by the Governor with the recommendation that provision be made, instead, for review by the hospital facilities appeals board so that all facilities would be treated equally. The Legislature did not heed the recommendation. The Governor then returned the bill without his approval (H. 7653) noting the Attorney General's adverse criticisms of it, including the main objection that it violated art. 30 of the Declaration of Rights of the Massachusetts Constitution regarding the separation of powers.[5] The veto was overridden by the necessary votes in both Houses.

The present case by the Commissioner of Public Health against Burke Hospital and the city of Lawrence seeks a declaration that the 1973 enactment, requiring the Commissioner to take the action therein specified, is unconstitutional as violating, besides art. 30, the "standing laws" provision of art. 10 of the Declaration of Rights, and the Fourteenth Amendment to the United States Constitution.

Upon consent of the parties, Winchendon Hospital, Inc., was permitted to intervene in the case to present a cognate controversy. This hospital, a charitable corporation under Massachusetts law, on August 13, 1973, filed its application pursuant to the permanent law, G. L. c. 111, § 25C, for a determination of need to enable it to construct a new health facility in Winchendon to replace the existing hospital. The permanent legislation need not be described in full here, except to say that, in comparison with the temporary statute, it adds and refines definitions,[6] elaborates procedures, and has a calculated statement of the

---

[5] The Attorney General also made minor criticisms of the bill: While the bill required the Commissioner to grant a certificate of need, determinations are in fact made by the department (Public Health Council and Commissioner); technically it is the facility, not the city, that receives the determination as to need; c. 111, § 51, does not mention a "temporary" license (but a license may run only for two years). On the ground that issuance of a certificate of safety was for the Department of Public Safety and not the Department of Public Health, the bill was also criticized for stating that the certificate of need should not be withheld pending issuance of a certificate of safety, nor the latter await the former. See fn. 25 below.

[6] Note especially the definitions of "construction" and "substantial capital expenditure" in § 25B.

366 Mass. 734                    739

Commissioner of Public Health *v.* The Bessie M. Burke Memorial Hospital.

object of the system of determinations of need.[7] The introduction of the health facilities appeals board — independent of the Department itself — has already been mentioned. Regulations were promulgated under the new statute in June, 1973, amplifying procedures and standards. Presented under the new statute and regulations, Winchendon Hospital's application of August 13, 1973, sought authority to construct an ambulatory care center with four intensive care beds, a fifty-two bed extended care facility, and a twenty-six bed acute care facility. On November 13, 1973, the Commissioner and the public health council (see St. 1972, c. 776, § 2A) voted on the application, transmitting the result to the applicant on January 8, 1974. There was a determination of need for the ambulatory care center (but without the four intensive care beds), and for the extended care facility, but no need was found for the acute care facility.[8] Winchendon Hospital took an appeal to the health facilities appeals board.[9] But it had already traveled the legislative route, for on November 19, 1973, St. 1973, c. 1053, was enacted over the Governor's veto, providing that, "[n]otwithstanding the provisions of . . . [c. 111, § 25C] or any other general or special law, the department of public health is hereby authorized and directed to make a determination of need as set forth in said . . . [c. 111, § 25C] as to the project described . . . [in Winchendon Hospital's application] and to approve said

---

[7] Section 25C states in part: "The department, in making any such determination, shall encourage appropriate allocation of private and public health care resources and the development of alternative or substitute methods of delivering health care services so that adequate health care services will be made reasonably available to every person within the commonwealth at the lowest reasonable aggregate cost."

[8] Twelve detailed reasons were assigned for the determination.

[9] The parties including the intervener entered into a stipulation filed April 2, 1974, that it would not be a bar to the determination of the constitutionality of St. 1973, c. 1053, that the appeal to the health facilities appeals board was still pending, or that the appeal might thereafter be acted upon. Also stipulated was that the plaintiff Commissioner would be deemed to "personify" and bind the Department for purposes of the case. The effect of this stipulation need not be considered.

project."[10] The Governor's message had noted (among other things) that a constitutional problem arose here as in the case of Burke Hospital and that the measure was one of a number of attempts in 1973 to secure exceptions from the general law. See S. 2033 with respect to S. 1938, amended.

The Commissioner of Public Health seeks as against the intervener a declaration of the unconstitutionality of St. 1973, c. 1053, paralleling that sought against Burke Hospital and the city of Lawrence with regard to St. 1973, c. 923. The case, lodged in the county court, is here on a reservation and report, without decision, by a single justice of this court, and the narrative given above sufficiently digests the pleadings, stipulation, and statement of agreed facts. In addition to briefs by the parties, the counsel to the House of Representatives has filed a brief as a friend of the court supporting the constitutionality of the two enactments.

By his reference to art. 10 of the Declaration of Rights the Commissioner argues that the statutes he attacks are objectionable because they create singular exceptions to or exemptions from general law. His argument from art. 30 changes the emphasis and says that the legislative command to him to make the determinations of need involves the Legislature in a trespass on functions forbidden to it in a tripartite system of government.

The Legislature has power, exemplified many times, to enact special or private laws, here meaning, very roughly, legislation addressed to a particular situation, that does not establish a rule of future conduct with any substantial degree of generality, and may provide ad hoc benefits of some kind for an individual or a number of them. Cf. *Forster* v. *Forster*, 129 Mass. 559, 561-562 (1880).[11] In this case we are dealing with such special legislation. The

---

[10] The Department was also directed to issue a renewal of the applicant's hospital license. Winchendon Hospital filed an application for renewal which had not been acted on but which while pending continued its license in effect.

[11] We put to one side the now separate or distinctive field of the Home Rule Amendment, art. 89 of the Amendments to the Constitution of the Commonwealth. See *Bloom* v. *Worcester,* 363 Mass. 136 (1973).

366 Mass. 734                                                        741

Commissioner of Public Health *v*. The Bessie M. Burke Memorial Hospital.

question raised by the Commissioner under art. 10 may therefore fairly be narrowed and restated thus: whether the special legislation here involved loses constitutional validity because in conferring a benefit it simultaneously exempts the beneficiary from complying with a procedure generally prescribed.

1. Before discussing art. 10, we encounter another constitutional provision, art. 20, which might be thought affirmatively to empower the Legislature to adopt just such special legislation. Article 20 states: "The power of suspending the laws, or the execution of the laws, ought never to be exercised but by the legislature, or by authority derived from it, to be exercised in such particular cases only as the legislature shall expressly provide for." With stress on "particular cases," this language might be read to authorize the Legislature to "suspend" a general law by exempting an individual from its operation, and thus the 1973 statutes at bar might be viewed as valid suspensions, with respect to the Burke and Winchendon hospitals, of the general law requiring determinations of need. The pros and cons of such an interpretation of art. 20 were discussed in the pages of the American Jurist long ago.[12] When one takes into account the historical basis of art. 20 in the attempts of the Crown to suspend the laws or operation of the laws without consent of Parliament,[13] one must agree with the occasional remarks in the decided cases that the core meaning of art. 20 is that only the Legislature, not the Executive or Judicial branches, may suspend an existing law. "Particular cases" means particular laws, and not particular individuals or matters within a class governed by a given law. See *Holden* v. *James*, 11 Mass. 396, 403-405 (1815); *Picquet, appellant,* 5 Pick. 65, 69-70 (1827); *Gray* v. *Salem,* 271 Mass. 495, 498 (1930). Cf. *Norwich* v. *County Commrs. of Hampshire,* 13 Pick. 60 (1833).

2. We come now to art. 10, first sentence: "Each individual of the society has a right to be protected by it in the

---

[12] 13 Am. Jurist 72, 81; 14 *id*. 83, 93 (1835).

[13] See *Holden* v. *James,* 11 Mass. 396, 404 (1815).

enjoyment of his life, liberty and property, according to standing laws." Might "standing" laws mean merely "promulgated" laws?[14] Decisional tradition accords more substance to the quoted sentence. It reads "standing" to mean "existing" with some further connotation of "general," so that in some sort art. 10 denies legislative power to single out an individual for treatment which departs from that which is being accorded the public, or a public, under law. Referring to art. 10, the *Holden* case, *supra,* at 405, put the proposition thus: "It is manifestly contrary to the first principles of civil liberty and natural justice, and to the spirit of our constitution and laws, that any one citizen should enjoy privileges and advantages, which are denied to all others under like circumstances: or that any one should be subjected to losses, damages, suits or actions, from which all others under like circumstances are exempted"; and *Dickinson* v. *New England Power Co.* 257 Mass. 108, 112 (1926), says that "the Legislature has no power to suspend the operation of a general law in favor of an individual." These remarks in relation to art. 10 were cited approvingly in the recent case of *Paddock* v. *Brookline,* 347 Mass. 230, 234, 237 (1964), which at the same time said that this court "has often upheld special legislation." At 233. In the *Holden* case, a statute purported to enlarge in favor of a named individual the period of limitations which would otherwise have applied to defeat his action against an administrator; the statute thus exposed the administrator anew to liability, and as it happened, liability in his personal capacity. In the *Paddock* case, a statute sought to save a named individual from the consequences of his having failed to give a notice to the municipality which was a condition of an action against it for negligence; so again the counterpart of the benefit attempted to be conferred on the individual was, or threatened to be, injury to another party. In both cases the statutes were considered invalid. The same element — benefit to the person singled out

---

[14] See 13 Am. Jurist 72, 79 (1835).

366 Mass. 734            743

Commissioner of Public Health *v.* The Bessie M. Burke Memorial Hospital.

accompanied by corresponding injury to another person who can be definitely pointed to — occurs in other cases where art. 10 is thought to be offended. *Forster* v. *Forster,* 129 Mass. 559, 561-562 (1880). *Casieri's Case,* 286 Mass. 50, 55 (1934). *Ziccardi's Case,* 287 Mass. 588, 590 (1934). On the other hand, art. 10 appears not to forbid a special or private act which, while assisting an individual, does not by its operation diminish or defeat an existing property interest of any other individual, or do other injury to him. That was the situation in an old case where the Legislature, deviating from existing law, passed a resolve authorizing a named life tenant of real property for economic reasons to convert the property into personalty — an attack was later launched by one in the position of remainderman. *Rice* v. *Parkman,* 16 Mass. 326 (1820).[15] Of the *Rice* case we said in the *Paddock* case that "the only object of the legislation was 'for purposes beneficial to all who were interested therein'; that there was no interference with the rights of others; and that 'it was not a case of controversy between party and party.' "*Paddock* v. *Brookline, supra,* at 234-235.[16] Textually, art. 10 with its reference to "[e]ach individual . . . protected . . . in the enjoyment of his . . . property" lends itself to such interpretations hinged on presence or absence of particular injury. Further, it appears that one party may be favored even at the expense of another if this is palliated by the existence of some connected, antecedent moral obligation owed by the latter to the former. So it is where a statute, excusing a failure of a party to make his claim to compensation for a taking of land by eminent domain, directs the governmental taker to reconvey the land to him. See *Wachusett Regional Sch. Dist. Comm.* v. *Erickson,* 353 Mass. 77, 80-81 (1967), and *Opinion of the Justices,* 354 Mass. 799, 800 (1968), dis-

---

[15] Followed in *Davison* v. *Johonnot,* 7 Met. 388, 395 (1844). Cf. *County of Essex* v. *Newburyport,* 254 Mass. 232 (1926).

[16] The *Paddock* case also said that in the *Rice* case the Legislature was exercising its "parental power." *Paddock* v. *Brookline, supra,* at 234.

tinguishing the *Paddock* and *Holden* cases, *supra.*[17] See also *Sullivan* v. *Commonwealth,* 365 Mass. 316, 319 (1974). Cf. *Danforth* v. *Groton Water Co.* 178 Mass. 472, 476-477 (1901); *Dunbar* v. *Boston & Providence R.R.* 181 Mass. 383, 386 (1902), and note the treatment of the *Danforth* case in *Ziccardi's Case, supra,* at 591, and *Weingartner* v. *North Wales,* 327 Mass. 731, 738 (1951). So also — reaching the opposite extreme from the *Holden* or like cases — an outright legislative bounty to an individual is unexceptionable if some public purpose is promoted, if the statute is "for the good and welfare" of the Commonwealth (Constitution, Part II, c. 1, § 1, art. 4), as to which the Legislature's judgment will weigh heavily. *Gray* v. *Salem,* 271 Mass. 495 (1930). *Opinion of the Justices,* 175 Mass. 599 (1900). When all these propositions are brought together and summed up, art. 10 seems to have as much latitude as the Fourteenth Amendment, and the similarity has of course been noted. Cf. *Lowell Gas Co.* v. *Department of Pub. Util.* 324 Mass. 80, 87 (1949).[18]

The two statutes in question here, intended in practical effect to allow construction of facilities at Burke and Winchendon hospitals, seem to us to escape the strictures of art. 10 because they are not shown to do injury to the interest of any individual or entity; and by the same token they do not violate the Fourteenth Amendment. There is a sense in which excessive or misguided construction and subsequent inefficient utilization of health care facilities may cast needless expense on the members of the public who foot the bill in the long run, and other adverse consequences to the public can be imagined, but these

---

[17] The *Paddock* case had found no such "moral" ground so that the statute was not "for the good and welfare" (see text below). The bases on which greater leniency might have been shown are elaborated in the *Sullivan, Danforth,* and *Dunbar* cases cited in the text just below.

In the *Wachusett* case and the *Opinion* cited in the text, the special statutes were not phrased as exemptions from general law, but they so operated as a practical matter.

[18] It would in fact be difficult to distinguish the art. 10 from the Fourteenth Amendment considerations in our decided cases. See, e.g., *Forster* v. *Forster, supra.*

results, if they should eventuate, are not the specific harms to identifiable persons with which art. 10 is concerned. Nor has it even been shown that either the Burke Hospital or Winchendon Hospital is in such "competition" with another hospital for the right to construct facilities, that the competitor might claim specific injury because an otherwise justified determination of need in its favor was being prevented or excluded by the legislatively imposed determination in favor of the Burke or Winchendon hospitals.[19]

3. The Commissioner next relies on art. 30 with its famous threefold statement of the doctrine of the separation of powers.[20] A recent *Opinion of the Justices,* 365 Mass. 639 (1974), dealing with a proposed statute for control by a central commission of government-wide data processing services illustrates the continuing importance of the separation principle despite its inherent indefiniteness. But we think art. 30 does not invalidate the special statutes here.

The argument for invalidity runs thus. Statutes excepting individuals from the operation of general laws, if otherwise constitutional, must, like other statutes, pass the test that they do not involve the Legislature in the exercise of nonlegislative powers. Here the Legislature enacted a general law confiding the problem of hospital construction to an administrative process under the aegis of one of the executive departments. While that delegation stands, it is argued, the Legislature may not command its delegate to act in a predetermined mechanical way in respect to a particular case, for this would involve the Legislature in an unconstitutional intrusion on the executive function.

The argument can be supported by reading blandly a statement such as that appearing in *Opinion of the Jus-*

---

[19] The statement of agreed facts indeed says that after denial of Burke Hospital's application the Department in taking action on other applications "relied in part" on the Burke Hospital denial. No such statement is made about Winchendon Hospital.

[20] "In the government of this Commonwealth, the legislative department shall never exercise the executive and judicial powers, or either of them: the executive shall never exercise the legislative and judicial powers, or either of them: the judicial shall never exercise the legislative and executive powers, or either of them: to the end it may be a government of laws and not of men."

746 366 Mass. 734

Commissioner of Public Health *v.* The Bessie M. Burke Memorial Hospital.

*tices,* 208 Mass. 610, 613 (1911) (an opinion not relevant on its facts to the present case): "The Legislature, in the exercise of its functions, may pass laws calling for action by the executive department, as it may pass laws calling for action by the judicial department. It is when it attempts to interfere with action taken by the executive department, or the judicial department, under existing laws, and thus to project itself into a field of action which belongs to another department, that art. 30 of the Declaration of Rights is violated."

The true gravamen of a supposed violation of art. 30, however, is not that the particular executive officer is being obliged to act mechanically in a particular case. That is a matter of form which, as we shall see, presents no serious obstacle.[21] The substantial question is whether the legislative enactment itself which dictates a given result involves an improper intrusion on the functions of another branch. This is a problem to be examined on the facts, and seems to us to turn at least in civil matters on whether that enactment infringes on proprietary rights or does other specific injury, so that the issue here is much like that under art. 10.

When the act conferring benefits on one also interferes with the existing rights of another, the act appears to be operating inter partes and to be doing administrative (or judicial) work, albeit in a possibly arbitrary way. Thus it offends art. 30. So in *Casieri's Case,* 286 Mass. 50 (1934), a legislative attempt to overcome a past decision in favor of the insurance company reached by an administrative tribunal, the Industrial Accident Board, was held invalid not only on art. 10 but on art. 30 grounds, the essence being that the decision was regarded as "property" of the insurance company; it was not "legislative" business to take that property away by a statute superseding the administrative decision.[22] Similarly when it is said in *Weingartner*

---

[21] This is brought out more fully in the discussion below of *Mayor & Aldermen of Springfield, petitioners,* 234 Mass. 578 (1920).

[22] But Cf. *Paramino Lumber Co.* v. *Marshall,* 309 U. S. 370 (1940).

366 Mass. 734 747

Commissioner of Public Health *v.* The Bessie M. Burke Memorial Hospital.

v. *North Wales,* 327 Mass. 731, 737 (1951), that "[a]rticle 30 of the Declaration of Rights of the Constitution of Massachusetts prohibits any legislative attempt 'to grant a new trial or a rehearing in a cause in the courts, or to declare ineffective or to reverse, annul, change, modify or affect the judgment of a court,'" it is the interference with existing rights of a party under the decree that is intrinsic to the violation of art. 30 (and also encompasses a violation of art. 10 or the Fourteenth Amendment). See *Holden* v. *James,* 11 Mass. 396, 402 (1815); *Picquet, appellant,* 5 Pick. 65, 68 (1827); *Denny* v. *Mattoon,* 2 Allen 361, 377 (1861); *Forster* v. *Forster,* 129 Mass. 559, 561-562 (1880).[23] On the other hand, any question of offense to separation of powers is either ruled out, or not even adverted to as a difficulty, where the particular piece of legislation has caused no hurt to individuals or the hurt is extenuated for "moral" or like reasons. See *Rice* v. *Parkman,* 16 Mass. 326, 329 (1820); *Danforth* v. *Groton Water Co.* 178 Mass. 472 (1901) (a previous judgment for the defendant was put at naught by the statute).

Coming to the broad regulatory field, the same line holds: The Legislature does not overstep its bounds when by a particular enactment in furtherance of regulation it supersedes an administrative decision without thereby working injury upon a private right (as such rights may be conceived at the time); at most this raises a question of form.[24] Cases testing these propositions are rare, possibly because legislative power has been assumed, but the industry of counsel has turned up two situations that are suggestive.

---

[23] Of course a court will be unsympathetic to an interpretation of a statute, supposedly assigning judicial duties to it, that would limit its discretion to the point of making it an automaton, repeatedly rubber stamping action taken by others. Cf. *Opinion of the Justices,* 251 Mass. 569 (1925); *Commissioner of Correction, petitioner,* 324 Mass. 535 (1949).

[24] In the case of the intervener Winchendon Hospital, technically no administrative act was "superseded" because the letter of January 8, 1974, containing the notice of determination, said it was effective on receipt, by which time c. 1053 had already been enacted. But we do not think anything should turn on this detail. In neither the Burke nor Winchendon situation had there been any action by a court prior to the exemptive legislation.

In *In re Petition of Mayor & Aldermen of Northampton,* 158 Mass. 299 (1893), proceedings under a general statute were instituted by the city of Northampton to abolish certain grade crossings. Commissioners appointed under the statute by the Superior Court had held hearings and rendered a decision including an apportionment of costs between railroad and city. While the matter was awaiting confirmation by the Superior Court, a statute was enacted directed in terms to the pending Northampton proceedings and stating in effect that the consent of the Northampton city council must be obtained to any change of grade and prohibiting the making of a final decree in the proceedings until such consent was voted and certified to the court. Nevertheless a judge of the Superior Court entered a decree without awaiting the vote. This court set aside the decree and gave effect to the later statute. Pointing out that neither the municipality nor the railroad had ordinary proprietary rights in respect to the grade crossing, that the Legislature had extensive powers over the subject matter, and could deal with it in a variety of ways, this court said (at 302): "At any time before a final decree is rendered in this cause, the Legislature can repeal the statutes under which it proceeds, and thus prevent any decree from being rendered in it. As the whole subject of the crossing of highways by railroads can from time to time be regulated by the Legislature, the Legislature can, even after a final decree has been rendered, make other provisions, and require the crossings to be constructed in a manner different from that established by the decree." Substantively there was no bar to the application of the statute nullifying the administrative decision. And so, over dissent, a majority of the court held, and set aside the decree, although with some attempt to read the statute as applicable to all grade crossings in the city rather than only those involved in the pending proceedings.

In *Opinion of the Justices,* 234 Mass. 612 (1920), commissioners, after hearings under a statutory procedure, had reported as to an apportionment among several localities of the costs of a bridge over the Connecticut River between

366 Mass. 734 . 749

Commissioner of Public Health *v.* The Bessie M. Burke Memorial Hospital.

Springfield and West Springfield. The commissioners' report was finally confirmed by this court in *Mayor & Aldermen of Springfield, petitioners,* 234 Mass. 578 (1920). It was then proposed to enact legislation changing the apportionment of costs, and the question of its constitutionality was put by the Senate to the Justices. The proposed statute carried substantive provisions declaring the changed apportionment, and concluded by superseding the previous statute and the commissioners' decision and the decree of court. The Justices observed that apportionment could be handled in various ways and in the end it was not a judicial function in the strict constitutional sense but partook also of a legislative and administrative character. "It [a determination respecting the construction and apportionment of the expenses of a bridge] establishes no contractual relation. It does not confer a property right in the private and constitutional sense. Being simply a regulation by government, it is subject to modification and change by the Legislature." 234 Mass. at 616. "Whatever rights the municipalities concerned had under the report of the commissioners and the decree of the court were of a public nature and subject to the control of the legislature." *Id.* at 619. The Justices answered that the bill would not violate the constitutional rights of any person or political subdivision. In deference to art. 30, so much of the bill as spoke of superseding the commissioners' decision and the decree of the court was ruled invalid because "[t]he Legislature cannot exercise judicial powers" (at 621), but this was said to be a "narrow" point (at 622) — an entirely formal one — unless, indeed, rights had somehow accrued under the decree, as to which the court was not advised. Evidently the bill could stand with the indicated excision.

In the present case the Legislature has extensive substantive powers. It could deal with the hospital expansion problem in any of a number of ways. It could prohibit described hospital expansions except as authorized by later specific enactments in favor of particular applicants. In fact a blanket restrictive statute was adopted. As in the cases just cited, however, the Legislature, having contin-

uing, wide regulatory power, could intervene before or after an administrative decision to make a further or different disposition that did not interfere with distinct rights. At most there was a formal difficulty, comparable to that noted in the Springfield bridge opinion, in the Legislature's directing the Commissioner or Department to issue mechanically the determinations of need. But the statutes can be regarded as themselves making the determinations and obviating any formal administrative acts, or the declaration of rights in the present proceedings can itself serve as permission to the hospitals.

It is not for us to indicate a judgment as to whether a course such as that taken by the Legislature in the 1973 statutes is merely a conspicuous invitation to logrolling or, on the contrary, an understandable and even necessary means of introducing an occasional equity into a general statutory scheme. We deal with nothing unique, for the brief on behalf of the House of Representatives cites a scattering of legislative acts evidently directing administrative bodies to deviate for the benefit of individuals in particular cases from generally applicable rules. It is enough to say that the legislative choices that were made in the present case cannot be assumed by us on the present record to have been against "the good and welfare."

The standing of the Commissioner to seek a declaratory judgment as to his rights and duties in this situation of doubt and controversy is not seriously challenged, and is supported by *Wachusett Regional Sch. Dist. Comm.* v. *Erickson,* 353 Mass. 77, 79-80 (1967), citing *School Comm. of Boston* v. *Board of Educ.* 352 Mass. 693, 696-697 (1967).

Concluding, we hold that the 1973 statutes are in substance valid, and we remit the case to the single justice[25] for entry of an appropriate declaratory judgment consistent with this opinion.

*So ordered.*

---

[25] Unless they are settled by agreement, the single justice may have to deal with problems arising from peculiarities of draftsmanship of the 1973 legislation. See fn. 5 above.