## OPINION OF THE JUSTICES TO THE SENATE.

*Constitutional Law,* Equal protection of laws, Legislation favoring individual, Opinions of the Justices.   *Lowell.*

On the limited facts known to the Justices with respect to a bill pending before the Senate to authorize Lowell High School, a public high school, to restrict participation in an extra curricular activity of the school, the Girl Officers Regiment, to students of the female sex, the bill would, if enacted, violate the declared policy of the Commonwealth, as found in art. 106 of the Amendments to the Massachusetts Constitution, that "[e]quality under the law shall not be denied or abridged because of sex." [886-888]

On August 24, 1977, the Justices submitted the following answer to a question propounded to them by the Senate.

To the Honorable the Senate of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit this answer to the question set forth in an order adopted by the Senate on June 6, 1977, and submitted to us on June 16, 1977. The order refers to Senate No. 1726 now pending before the Senate and entitled, "An Act authorizing the Lowell High School to offer participation in the Girl Officers Regiment to certain students."

The bill reads, "Notwithstanding the provisions of section five of chapter [seventy-six of the General Laws, as amended by section one of chapter 622 of the acts of 1971],[1] or any rule or regulation thereunder, the Lowell High School is hereby authorized to continue to offer to

---

[1] The bill as submitted to us contained a reference to "section five of chapter seventy-one of the General Laws." We have been informed by the office of the counsel to the Senate that the proper reference is as it appears above.

its female students participation in the Girl[2] Officers Regiment of said school."

The order states, "Said bill, if enacted into law, would authorize Lowell High School, a public high school, to restrict participation in an extra-curricular activity of said high school, the Girl Officers Regiment, to students of the female sex; and ... [g]rave doubt exists as to the constitutionality of said bill if enacted into law."

The question is:

"Would the bill (Senate No. 1726), if enacted into law, be in violation of the declared policy of the commonwealth that equality under the law shall not be denied or abridged because of sex, race, color, creed or national origin, as found in Article 106 of the Amendments to the Constitution of the Commonwealth?"

Before proceeding to the question propounded by the Senate, we think it proper to state that the bill may be fatally defective on its face for a different reason from that expressly inquired of. The bill if enacted would suspend the operation of G. L. c. 76, § 5, as amended through St. 1973, c. 925, § 9A, for the particular high school extracurricular activity named therein. That statute provides in pertinent part: "No person shall be excluded from or discriminated against in admission to a public school of any town, or in obtaining the advantages, privileges and courses of study of such public school on account of race, color, sex, religion or national origin."[3]

Although we need reach no conclusion on the issue, we observe that the bill arguably may be invalid under

---

[2] The bill reads "Girls," but this is an obvious typographical error, since the true name of the organization is "Girl" Officers Regiment.

[3] We are informed by a letter from the Girl Officers Alumnae to the proponent of the bill in question, forwarded to us by the office of the counsel to the Senate, that the Lowell High School administration was informed by the State Department of Education that the composition of the Girl Officers Regiment was in violation of G. L. c. 76, § 5, as participation was restricted to female students. The bill was apparently proposed to exempt the Girl Officers Regiment from the operation of this statute to enable it to continue in its traditional form.

art. 10 of the Declaration of Rights of the Massachusetts
Constitution, the first sentence of which provides: "Each
individual of the society has a right to be protected by it in
the enjoyment of his life, liberty and property, according
to standing laws." Senate No. 1726 suffers from the same
constitutional infirmity as would an enactment which
"purports to exempt a named individual from the obliga-
tions of a general law while allowing the general law to
remain in full force and effect as to all other persons,"
and appears to fall squarely within the principle we have
previously expressed that the Legislature has no power to
suspend the operation of a general law in favor of an in-
dividual. *Paddock* v. *Brookline,* 347 Mass. 230, 236-237
(1964). *Dickinson* v. *New England Power Co.,* 257 Mass.
108, 112 (1926). *Holden* v. *James,* 11 Mass. 396, 403-405
(1815). A comprehensive statement of the principles un-
derlying art. 10 may be found in the recent case of *Com-
missioner of Pub. Health* v. *Bessie M. Burke Memorial
Hosp.,* 366 Mass. 734 (1975). In that case, we concluded
that the limitation on legislative power contained in art.
10 prohibits special legislation which in exempting a named
individual from the operation of the general laws dimin-
ishes or defeats existing rights of other persons. *Id.* at 742-
743, and cases cited therein. Senate No. 1726 on its face
singles out the young men of Lowell High School and di-
minishes their rights under G. L. c. 76, § 5, while leaving
the statute in full force and effect for all other public
school students of the Commonwealth. Indeed, the legisla-
tion apparently was designed with that very result in
mind. Although we noted in *Commissioner of Pub. Health*
v. *Bessie M. Burke Memorial Hosp., supra* at 743-744, the
similarity in latitude allowed to the Legislature under art.
10 and the Fourteenth Amendment to the Constitution of
the United States, on the limited facts known to us we can
discern no promotion of a public purpose which would
bring this case into the limited exceptions to the general
principle. See, e.g., *Sullivan* v. *Commonwealth,* 365 Mass.
316, 319 (1974); *Opinion of the Justices,* 354 Mass. 799,
801-802 (1968).

We observe also that the bill may be defective, and may present no "solemn occasion" to this court, if not enacted in accordance with art. 89 of the Amendments to the Constitution of the Commonwealth (the Home Rule Amendment), particularly § 8 of that Amendment. Cf. *Answer of the Justices,* 356 Mass. 769, 771-772 (1969).

Having noted potential defects under art. 10 of the Declaration of Rights and art. 89 of the Amendments, we turn now to the question propounded by the Senate concerning the validity of the bill under art. 106 of the Amendments to our Constitution. That article amended art. 1 of the Declaration of Rights. The relevant portion of the Amendment reads: "Equality under the law shall not be denied or abridged because of sex, race, color, creed or national origin." With the exception of sex, these classifications have long been afforded extensive protection under the Fourteenth Amendment to the Constitution of the United States. Race, color, and national origin have been designated suspect classifications and as such have been subject to the strictest judicial scrutiny. Governmental action which apportions benefits or burdens according to such suspect categorizations is constitutionally permissible only if it furthers a demonstrably compelling interest and limits its impact as narrowly as possible consistent with the legitimate purpose served. See, e.g., *Graham* v. *Richardson,* 403 U.S. 365 (1971) (alienage); *Loving* v. *Virginia,* 388 U.S. 1 (1967) (race); *Oyama* v. *California,* 332 U.S. 633 (1948) (national origin).[4]

Sex-related classifications have not been subject to the same degree of scrutiny, although they have been afforded a higher level of scrutiny than the rational basis analysis, traditional where suspect classifications and fundamental rights are not implicated. See, e.g., *Commonwealth* v. *MacKenzie,* 368 Mass. 613 (1975); *Craig* v. *Boren,* 429 U.S.

---

[4] The judicial scrutiny given to classifications based on race and national origin has demonstrated that, in effect, such discrimination is absolutely prohibited. Only in one case has the United States Supreme Court found a "compelling State interest" which was held to justify such discrimination. *Korematsu* v. *United States,* 323 U.S. 214, 223-224 (1945).

190, 197 (1976); *Kahn* v. *Shevin,* 416 U.S. 351 (1974); *Frontiero* v. *Richardson,* 411 U.S. 677 (1973); *Reed* v. *Reed,* 404 U.S. 71 (1971).

In *Commonwealth* v. *MacKenzie, supra* at 615, which we decided before the adoption of art. 106, we said that "[t]he judicial scrutiny required in cases involving distinctions based solely on sex is stricter than that required under traditional equal protection standards." We further stated at 615-616, that it is not permissible for the State to make distinctions based on sex unless the distinctions bear a "fair and substantial relation[ship]" to a permissible State objective, quoting from *F.S. Royster Guano Co.* v. *Virginia,* 253 U.S. 412, 415 (1920).

It can be argued persuasively that, by adopting art. 106, the people of Massachusetts have expressed their intention that the strict scrutiny required by the United States Constitution in discrimination cases involving other fundamental First Amendment rights should be now applied to distinctions based on sex. We need not decide at this time whether strict scrutiny and the related "compelling State interest" tests are to be applied for the determination whether the bill here in question would violate the constitutional guaranty of sexual equality established by the Amendment. It seems clear to us, on the unfortunately limited version of the facts which we have been able to glean through the cooperation of Senate counsel, that the bill fails to meet even the requirement of the "fair and substantial relation[ship]" to a permissible State objective, as required by the *MacKenzie* case in matters of sexual distinction. As shown in a letter from the Girl Officers Alumnae (April 11, 1977) the Girl Officers Regiment apparently performs such functions as assisting gymnastic teachers in conducting classes, serving as ushers at social events and as honor guards at civic ceremonies, sponsoring their own social events, and marching in parades. We can, on the limited facts available, conceive of no possible governmental interest of sufficient magnitude and weight to permit such discrimination. The bill appears on its face to have no purpose other than to exclude male students from participation in a publicly supported program in a coedu-

cational public high school in the interests of perpetuating the organization's traditionally sex-restrictive membership requirement.

We recognize that the question propounded does not present the type of concrete controversy on which decisions of constitutional law are best rested. We make the determination we do on the basis of the facts now before us. Advisory opinions are not binding in subsequent litigation, but we have no doubt of our continued adherence to the constitutional principles discussed herein. If the bill is enacted in a form consistent with art. 10 it will be open to future litigants to attempt to demonstrate a legitimate governmental purpose furthered by the legislation which is sufficient to overcome the claim of unconstitutionality. Based on the information now available to us, we doubt that such a purpose exists with respect to Senate No. 1726 as it now appears or as it might be amended to conform with art. 10, and we therefore answer the question, "Yes."

The foregoing answer and opinion is submitted by the Chief Justice and the Associate Justices, subscribing hereto on the twenty-fourth day of August, 1977.

EDWARD F. HENNESSEY
FRANCIS J. QUIRICO
ROBERT BRAUCHER
BENJAMIN KAPLAN
HERBERT P. WILKINS
PAUL J. LIACOS
RUTH I. ABRAMS