CITY OF LAWRENCE & another *vs.* FRANCIS G. FALZARANO (and a companion case[1]).

Suffolk.    March 8, 1979. — May 18, 1979.

Present: HALE, C.J., GRANT, & DREBEN, JJ.

*Contract*, Validity, With municipality. *Municipal Corporations*, Contract. *Arbitration*, Authority of arbitrator, Judicial review.

Statute 1971, c. 1080, prohibiting hospital construction and renovation in the absence of a certificate of need issued by the Department of Public Health, does not operate to render illegal a municipality's entering into a contract for hospital renovation before it has obtained a certificate of need. [594-595]
General Laws c. 44, § 31C, requiring that municipal construction contracts contain a certification that an appropriation is available in an amount sufficient to cover the contract price, is designed for the protection of contractors, and such a contract was valid notwithstanding the absence of the prescribed certification where there was in fact a sufficient appropriation. [595-597]

---

[1] Francis G. Falzarano *vs.* City of Lawrence.

An award by arbitrators of damages to a hospital renovation contrac-
tor against a municipality was void as in excess of the arbitrators'
authority, where it did not appear whether the award was for delay
or for loss of profits, inasmuch as an award for loss of profits, in view
of the municipality's lack of a certificate of need issued by the
Department of Public Health, would effectuate an impermissible
purpose. [598-599]

Two CIVIL ACTIONS commenced in the Superior Court
on April 20, 1976, and April 26, 1976, respectively.

The cases were heard by *George, J.,* a District Court
judge sitting under statutory authority.

*Warren G. Miller* for Francis G. Falzarano.

*Edward J. Grimley, Jr.,* City Solicitor, for the city of
Lawrence.

HALE, C.J. On June 11, 1975, Francis G. Falzarano, in
his own behalf as general contractor and in behalf of
certain subcontractors, filed a demand for arbitration
with the American Arbitration Association seeking
"monetary damages for delay and for loss of anticipated
profits" arising out of the alleged breach by the city of
Lawrence of a contract for major renovations of the build-
ings of the Bessie M. Burke Memorial Hospital (hospital).
After a hearing the arbitrators rendered an award in
favor of Falzarano. The city and the Hospital filed a com-
plaint seeking to vacate the award on the grounds that
there was no valid and enforceable arbitration agreement
and that the arbitrators exceeded their powers in making
the award. See G. L. c. 251, § 12(a)(3) and (5). Falzarano
filed a separate complaint seeking confirmation of the
award. The two matters were consolidated and heard by
the judge on statements of counsel. The judge was also
furnished with a copy of the city council's order, certified
by the city clerk, appropriating $1,500,000 for the work
contemplated by the contract. A judgment was entered
on the first complaint vacating the award. A judgment
was entered on Falzarano's complaint denying confirma-
tion.[2] Falzarano has appealed from both judgments.

[2] In addition to the proceedings just described, the city had sought
to stay the arbitration proceedings in the Essex County Probate Court

The judge found the following facts. On November 23, 1971, Falzarano and the city entered into a contract for the renovation of the Hospital. Unbeknownst to either party, the Legislature, on November 10, 1971, had enacted St. 1971, c. 1080, requiring a determination of need by the Department of Public Health before any person could commence construction or renovation of an existing health care facility. This act contained an emergency preamble by which it became effective on November 15. On November 24, the city learned of c. 1080, notified Falzarano not to proceed with the contract, and told him that it would attempt to obtain a certificate of need. Although Falzarano subsequently signed contracts with various subbidders and some equipment was moved to the construction site, no substantial work was ever performed under the contract. The city applied for a certificate of need in December, 1971, but its application was denied on April 11, 1972.[3] The judge found that on several occasions Falzarano wrote the city about the delay in obtaining the certificate. On May 26, 1972, he "executed a letter terminating the contract and the city council voted to terminate it on the same date."

The judge ruled that "although the contract was legal, performance was illegal. . . . The illegality is fundamental to the contract and makes performance impossible." He

---

on the ground that there was no valid agreement to arbitrate. The application for a preliminary injunction was denied. The Probate Court was without jurisdiction to entertain such proceedings, jurisdiction over them being limited to the Superior Court. G. L. c. 251, § 2(b) (as appearing in St. 1960, c. 374, § 1). The Probate Court proceedings were a nullity and have no bearing on these cases.

[3] The city alleges that it appealed from that denial to the Health Facilities Appeals Board, which on December 20, 1972, ruled that it had no jurisdiction, and that the city then petitioned the Legislature for assistance. On October 17, 1973, St. 1973, c. 923 (enacted over the Governor's veto), directed the Commissioner of Public Health to issue the certificate of need. See *Commissioner of Pub. Health* v. *Bessie M. Burke Memorial Hosp.*, 366 Mass. 734 (1975).

determined that there had been no breach of the contract by either party and that the parties had mutually terminated the contract in May, 1972. The judge concluded that "[t]here being no valid binding contract between the parties when arbitration was sought, . . . the arbitrators exceeded their powers in determining that a contract binding upon the parties was in force at the time arbitration was sought."

We conclude that the arbitration award was properly vacated and the application to confirm properly denied, although we arrive at our conclusion by a different route from that taken by the trial judge. We affirm the judgments.

1. The first issue presented by Falzarano's appeals is whether there was a valid agreement to arbitrate, where the contract containing the agreement called for performance which would have been illegal if commenced prior to the issuance of a certificate of need. Statute 1971, c. 1080,[4] did not on its face prohibit the making of a contract for the renovation of a health care facility. See *Broussard* v. *Melong*, 322 Mass. 560, 562 (1948). Contrast *Somers* v. *Commercial Fin. Corp.*, 245 Mass. 286, 288 (1923), and cases cited. "The fact that a party bargains to do an act which will be illegal unless governmental permission is obtained does not make such a bargain illegal . . . . Many contracts cannot lawfully be performed without securing a permit, license, or approval from some governmental officer or board, and yet the contracts are not deemed illegal." 15 Williston, Contracts § 1767, at 267-268 (3d ed. 1972).

---

[4] Statute 1971, c. 1080, § 1, provides in pertinent part: "Notwithstanding any contrary provision of law, no person shall (a) commence construction of a new health care facility at a specific location or commence construction altering, adding to, making major repairs to, remodelling, renovating or replacing an existing such facility or part thereof or (b) substantially change its services, during the period extending from the effective date of this act to May the thirty-first, nineteen hundred and seventy-two unless there is a determination by the department of public health that there is need therefor."

Statute 1971, c. 1080, was enacted "[t]o prevent un-
necessary expansion of health care facilities in the Com-
monwealth and encourage appropriate allocation of re-
sources for health care purposes . . . ." *Commissioner of
Pub. Health* v. *Bessie M. Burke Memorial Hosp.*, 366
Mass. 734, 735 (1975). This policy would not operate to
render illegal the mere act of entering into a construction
contract. Compare *Chase's Patent Elevator Co.* v. *Boston
Towboat Co.*, 152 Mass. 428, 429 (1890); *Reuter* v. *Ballard*,
267 Mass. 557, 566 (1929); *Nussenbaum* v. *Chambers &
Chambers Inc.*, 322 Mass. 419, 422 (1948); *Tocci* v. *Lembo*,
325 Mass. 707, 709 (1950). In so concluding, we take the
position that if the statute did not declare the contract to
be void, and if it is not necessary to hold the contract void
in order to accomplish the purpose of the statute, the
inference is that the statute was not intended to prohibit
the making of the contract. *Broussard* v. *Melong*, 322
Mass. at 561, and cases cited.

Our conclusion in this regard coincides with the trial
judge's determination that the contract was legal. How-
ever, we do not go so far as to find illegal performance.
There were findings by the judge to the effect that there
was no substantial performance. We find it unnecessary
to discuss those cases relied upon by the city in its brief
which hold that illegal performance is a bar to recovery,
even where the contract itself is legal. See *Tocci* v. *Lembo*,
325 Mass. at 710; *Hawes Elec. Co.* v. *Angell*, 332 Mass.
190, 191-192 (1955).

2. We now consider whether there was a valid agree-
ment to arbitrate where the contract allegedly did not
comply with G. L. c. 44, § 31C.[5] The contract did not have

[5] General Laws c. 44, § 31C (as appearing in St. 1964, c. 693, § 1),
provides in pertinent part: "No contract for the construction, recon-
struction, alteration, remodeling, repair or demolition of any public
building . . . by any city . . . costing more than two thousand dollars
shall be deemed to have been made until the auditor or accountant or
other officer of the city . . . having similar duties has certified thereon
that an appropriation in the amount of such contract is available

a certification thereon that an appropriation was available in an amount sufficient to cover the contract price. The city does not suggest that there was an insufficient appropriation and would be hard put to do so, as there was before the judge the certified copy of an order of the city council's appropriation of $1,500,000, over $500,000 more than Falzarano's total contract amount.

We recognize the general rules (1) that "[p]ersons dealing with a municipality must take notice of limitations . . . upon the contracting power of the municipality and are bound by them and cannot recover upon contracts attempted to be made in violation of them" (*Adalian Bros.* v. *Boston*, 323 Mass. 629, 631 [1949]; *Sancta Maria Hosp.* v. *Cambridge*, 369 Mass. 586, 595 [1976]), (2) that "[a] contract, to be binding upon a city or town, must be entered into in strict conformity with pertinent charter and statutory provisions." Hardy, Municipal Law and Practice § 12, at 15 (2d ed. 1971).

The cases cited by the city in its brief and others we have considered in which the rule of strict conformity was followed are distinguishable from the case at bar. Several of those cases dealt with the provisions of G. L. c. 44, § 31, which prohibit a municipal department from incurring a liability in excess of appropriations. The purpose of that statute is to provide an important central municipal control over irresponsible spending (*Amherst-Pelham Regional Sch. Comm.* v. *Department of Educ.*, 376 Mass. 480, 494-495 [1978]) and "to set rigid barriers against expenditures in excess of appropriations . . . and in general to put cities upon a sound financial basis . . . ." *Continental Constr. Co.* v. *Lawrence*, 297 Mass. 513, 515 (1937). *Rich & Son Constr. Co.*, v. *Saugus*, 355 Mass. 304, 307 (1969). Cases construing G. L. c. 44, § 31, have held

therefor . . . . The certificate . . . that an appropriation in the amount of such contract or order is available shall bar any defense by the city . . . on the grounds of insufficient appropriation; and any law barring payment in excess of appropriations shall not apply to amounts covered by any certificate under this section."

that a contract is not binding to the extent that it purports to subject a city to liability in excess of appropriations. *Arthur R. Murphy, AIA, & Associates* v. *Brockton,* 364 Mass. 377, 380 (1973). *Marlborough* v. *Cybulski, Ohnemus & Associates,* 370 Mass. 157, 161 (1976).

General Laws c. 44, § 31C, discloses a purpose quite different from the policies underlying G. L. c. 44, § 31. Looking to the language of G. L. c. 44, § 31C, following the provision for a certificate of appropriation, we note that the statute provides that "[t]he certificate . . . shall bar any defense by the city . . . on the grounds of insufficient appropriation; and any law barring payment in excess of appropriations shall not apply to amounts covered by any certificate under this section." There is no provision in § 31C specifically relieving the city of liability under a contract which is not in compliance with its terms. Compare G. L. c. 44, § 31. Contrast *Ryan* v. *Somerville,* 328 Mass. 324 (1952). The title of the statute by which § 31C was inserted in the General Laws, "An Act providing that payment for certain public construction contracts shall not be barred by reason of being in excess of appropriations," also guides us in determining legislative intent. *Bellows Farms, Inc.* v. *Building Inspector of Acton,* 364 Mass. 253, 258-259 (1973), and cases cited. It is apparent that the purpose of G. L. c. 44, § 31C, is to provide contractors engaged in public construction work with a ready and reliable means of ascertaining that there is an appropriation sufficient to cover the proposed work and to protect them where the contract carries a certification that there exists a sufficient appropriation to cover the contract money, even though the appropriation be insufficient or nonexistent. Where, as here, there was in fact a sufficient appropriation, we conclude that the purpose underlying G. L. c. 44, § 31C, would not be effected by invalidation of the contract.

We do not concern ourselves with the city's argument addressed to the provisions of § 2-119 of the Revised Ordinances of the City of Lawrence. The ordinance has not

been included as part of the record. Ordinances are not matters of which we can take judicial notice. *Gaunt* v. *Board of Appeals of Methuen,* 327 Mass. 380, 381 (1951).

3. Since we have concluded that neither St. 1971, c. 1080, nor G. L. c. 44, § 31C, rendered the contract illegal, there was no basis for vacating the award under G. L. c. 251, § 12(*a*)(5), on the ground that there was no agreement to arbitrate because of any such illegality. The award must nevertheless be vacated on the ground that the arbitrators exceeded their authority. G. L. c. 251, § 12(*a*)(3). In his demand for arbitration Falzarano sought damages for delay and loss of anticipated profits. Additionally, the judge was informed that the claim of loss of anticipated profits was heard by the arbitrators. The award does not specifically indicate whether damages for delay or loss of profits, or both, were awarded. We recognize that an award of an arbitrator need not include any statement of reasons, findings of fact or conclusions of law. *Fidelity Cas. Co.* v. *Cooke,* 357 Mass. 763 (1970). "It is the legal presumption, unless the contrary appears, that arbitrators pursue the submission and decide only the matters therein contained, and also that they decide all matters submitted to them." *Fazio* v. *Employers Liab. Assur. Corp.,* 347 Mass. 254, 257 (1964). In the circumstances of this case the foregoing presumption requires us to conclude that the award provided compensation to Falzarano for loss of anticipated profits. "[A]n arbitrator has no power to make an award which requires a municipality to pay funds for a purpose for which municipal funds may not be expended." *Boston Teachers Local 66* v. *School Comm. of Boston,* 370 Mass. 455, 467 (1976). In our opinion an award to compensate for loss of profits at least would effectuate such an impermissible purpose. Both parties became aware that there could be no legal performance of the contract without a certificate of need from the Department of Public Health. As we have no means of separating out the amount awarded for loss of profits, we hold that the award as it stands was properly

vacated. *J. F. Fitzgerald Constr. Co.* v. *Southbridge Water Supply Co.,* 304 Mass. 130, 137 (1939).

By concluding that that award must fail we do not disturb it on the ground, not open to us, that the arbitrators made an error of law or fact (see *Trustees of Boston & Me. Corp.* v. *Massachusetts Bay Transp. Authy.,* 363 Mass. 386, 390-391 [1973]), but on the basis that a court will not lend its aid to the furtherance of an illegality. "Arbitration may not be utilized to make enforceable transactions which are prohibited by statute or to validate conduct offensive to public policy. An arbitration award is not available for the purpose of affording relief forbidden by law or proscribed by public policy." Eager, The Arbitration Contract and Proceedings § 121.5 (1971). *Marlborough* v. *Cybulski, Ohnemus & Associates,* 370 Mass. at 160-161.

*Judgments affirmed.*