MASSACHUSETTS PORT AUTHORITY *vs.* TREASURER AND RECEIVER GENERAL & others.[1]

Suffolk. April 4, 1967. — June 16, 1967.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & REARDON, JJ.

*Massachusetts Port Authority. Retirement. Constitutional Law,* Obligation of contracts, Police power, Public instrumentality, Due process of law.

After the Massachusetts Port Authority took control of and title to the Mystic River Bridge in 1959 pursuant to St. 1956, c. 465, as amended, and employees of the Mystic River Bridge Authority, who had not been

---

[1] The members of the State Board of Retirement.

members of the State retirement system, became employees of the Port Authority and members of the system, the Port Authority was required by § 22, as amended by St. 1958, c. 599, § 10, and St. 1960, c. 525, § 1, to bear in full the pension and retirement liabilities to the transferred employees under G. L. c. 32, §§ 5, 6, 10 (1) and 56–60, without apportionment of any of such liabilities to the State, insofar as such liabilities were based directly on the transferred employees' "creditable prior service" with the Bridge Authority.   [759–760, 761]

After the Massachusetts Port Authority took control of and title to the Mystic River Bridge in 1959 pursuant to St. 1956, c. 465, as amended, and employees of the Mystic River Bridge Authority, who had not been members of the State retirement system, became employees of the Port Authority and members of the system, the Port Authority was required to bear in full the liabilities to the transferred employees or their beneficiaries under G. L. c. 32, §§ 7 and 9, for accidental disability or death; payments under such liabilities were directly attributable to employment with the Port Authority and were a charge related to that employment, and under § 22 of St. 1956, c. 465, as amended, no part of such payments could be apportioned to the State.   [761]

After the Massachusetts Port Authority, a public instrumentality, had issued its revenue bonds in 1959 pursuant to St. 1956, c. 465, as amended by St. 1958, c. 599, the increase in the Authority's pension and retirement liabilities brought about by the enactment of St. 1960, c. 525, § 1, amending § 22 of the 1956 statute, was a proper exercise of the police power and did not constitute an impairment of the obligation of the Authority's bond contract or deprive it or its bondholders of property without due process of law.   [761–763]

BILL IN EQUITY filed in the Superior Court on November 10, 1965, for declaratory relief.

The suit was reported by *Bolster, J.,* without decision.

*John M. Harrington, Jr.* (*David M. Donaldson* with him) for the Massachusetts Port Authority.

*Paul N. Gollub,* Assistant Attorney General (*Herbert E. Tucker, Jr.,* Assistant Attorney General, with him), for the Treasurer and Receiver General & others.

CUTTER, J.   The Authority (M.P.A.) seeks declaratory relief about the extent of its obligation to bear the ultimate burden of retirement and disability allowances and death benefits paid to or on account of certain of its former employees.   These employees, for the most part, were formerly employees of Mystic River Bridge Authority (Mystic).   The case has been reported without decision by a judge of the Superior Court upon the pleadings and statements of agreed facts.

Until February 17, 1959, Mystic (see St. 1946, c. 562) operated the Mystic River Bridge. M.P.A. (created by the enabling act, St. 1956, c. 465, as amended), on February 17, 1959, took over control of and title to the bridge, the airport, and certain port properties. Employees of Mystic and of State instrumentalities operating the properties thus taken over became employees of M.P.A. under § 22[2] of the enabling act. Certain of these employees either are now dead or have retired. Such employees fall into groups mentioned in the three following paragraphs.

(a) From February 17, 1959, until November 10, 1965, the date when this bill was filed, thirteen employees of M.P.A., who were formerly employees of Mystic, have been retired under G. L. c. 32, §§ 5, 6, or 10 (retirement for age or ordinary disability).[3] They are being paid or have been paid retirement allowances.

(b) From February 17, 1959, to December 31, 1964, eight employees of M.P.A. "who had accumulated creditable service for retirement purposes prior to their employment by . . . [M.P.A.] have retired under . . . G. L. c. 32, § 7 [accidental disability retirement for service connected disability,] or death benefits are being paid with respect to them under the provisions of § 9 [accidental death benefits]

---

[2] (a) Section 22, as amended by St. 1958, c. 599, § 10, and prior to its amendment by St. 1960, c. 525, § 1, read in part, "Every employee who immediately prior to being transferred to . . . [M.P.A.] by this section is a member of the state retirement system shall continue to be a member thereof . . . . All other employees of . . . [M.P.A.] shall be required to become members of the state retirement system in the same manner . . . as persons entering the employ of the commonwealth. *Employees of . . . Mystic . . . upon becoming members of the state retirement system shall be allowed as creditable prior service the period of their employment by . . . Mystic . . . under federal old age and survivors insurance laws.* . . . [M.P.A.] shall reimburse the commonwealth *for its proportionate share* of any amounts expended by the commonwealth under the provisions of . . . [G. L. c. 32] for retirement allowances to or on account of its employees" (emphasis supplied).

(b) By St. 1960, c. 525, § 1, the first part of the italicized language was revised to read, "Employees of . . . Mystic . . . upon becoming members of the state retirement system shall be allowed as creditable prior service *the total period of their prior employment by*" Mystic (emphasis supplied).

[3] These sections relate to retirement allowances based on creditable service for employees other than veterans, payable when an employee retires because of age (§ 5, as amended); or because of ordinary disability, that is, disability not caused by employment (§ 6, as amended); or because of resignation and certain other causes, see § 10 (1), as amended.

of'' c. 32.[4]  It does not appear that all of these eight employees had prior service with Mystic.

(c) Retirement allowances are being, or have been, paid under G. L. c. 32, §§ 56–60, to two veterans who were employees of M.P.A. They were formerly employees of Mystic. Veterans who were first employed by the Commonwealth before July 1, 1939, have the benefit of special provisions (G. L. c. 32, §§ 56–60) [5] which are administered by, but are not part of, the State retirement system. The rights of each such veteran who was transferred to M.P.A. were preserved in § 22 of the enabling act by the provision set out in the margin.[6]

The controversy concerns (emphasis supplied) the meaning (1) of the language (fn. 2) of § 22 imposing on M.P.A. an obligation to ''reimburse the commonwealth for *its proportionate share* of any amounts expended by the commonwealth under'' G. L. c. 32, ''for retirement allowances to or

---

[4] These sections provide for allowances *not directly based on creditable service* and include retirement allowances for accidental disability causally related to employment (§ 7, as amended) and accidental death benefits (§ 9, as amended). These are made up of two parts (a) an annuity (or a refund of the total deduction plus interest), which is composed of and financed by contributions deducted from the employee's salary under c. 32, § 22 (1); and (b) an allowance financed completely by an annual appropriation by the Legislature. See c. 32, § 22 (3). Creditable service is not under § 7 and § 9 a factor in determining benefits for accidental disability and death.

[5] These sections provide benefits for certain veterans. A veteran who has at least ten years of creditable service and who began work for the Commonwealth before July 1, 1939, may elect to receive a pension under §§ 56–60 rather than under the regular system. He may have his contributions refunded. This pension plan is not a part of the State retirement system. Under §§ 56–60, a veteran who has at least ten years of creditable service and who is incapacitated for active service is entitled to a pension equal to one-half his salary plus one per cent of his salary for each year of creditable service over ten (maximum pension, sixty-five per cent). Under § 58 a veteran with thirty years of creditable service is entitled to a pension of sixty-five per cent of his salary. Thus, the amount of the pension depends on the number of years of creditable service.

[6] Section 22 (as amended through St. 1958, c. 599, § 10) reads in part, ''Every person who immediately prior to being transferred to . . . [M.P.A.] was subject to the provisions of'' G. L. c. 32, §§ 56–60, ''shall continue subject to . . . said sections; provided, however, that the words 'retiring authority,' as used in said sections shall mean the members of . . . [M.P.A.], and provided, further, that the amount of all retirement allowances payable under said sections by virtue of this act shall be paid by . . . [M.P.A.] *and the commonwealth shall reimburse* . . . [M.P.A.] *for its proportionate share of any amounts so paid.* Upon the retirement of any such person under'' §§ 56–60, ''the state retirement board shall refund to the person so retired the amount of his accumulated deductions'' (emphasis supplied).

on account of its employees,'' and (2) of the later language (fn. 6) of § 22 requiring the Commonwealth to ''reimburse . . . [M.P.A.] for *its proportionate share* of any amounts . . . paid'' by M.P.A. for retirement allowances under G. L. c 32, §§ 56–60, to veterans transferred in 1959 to M.P.A. from Mystic as employees.

M.P.A. contends that the burden of these allowances is to be allocated to M.P.A. only to the extent of the proportion which (a) each employee's creditable service after February 17, 1959, bears to (b) such employee's total creditable service. The defendants contend that M.P.A. must bear (a) the whole burden of the benefits based upon accidental disability causally related to employment (§ 7) and of accidental death benefits (§ 9), each of which is not directly based on creditable service, see fn. 4; and (b) the burden of all other retirement allowances (including those to veterans), except that portion which is attributable to creditable service in another State governmental unit which is, or was, a part of the State retirement system. Mystic was not a part of that system, so the defendants contend that M.P.A. must bear the burden of all retirement allowances (whether for veterans or others) so far as they are based upon creditable service with Mystic.

Section 22 of the enabling act and its amendments are ambiguous. Viewing § 22 as a whole, however, we interpret the general legislative purpose in a manner consistent with the defendants' contentions.

1. With respect to their service with M.P.A. after February 17, 1959, persons with prior service with Mystic or other State instrumentalities under § 22 were to have stated benefits because of that prior service. By § 22 each person who became in 1959 an employee of M.P.A. and who had accrued creditable service in the State retirement system was to retain that benefit. Each M.P.A. employee who then was not a member of the State system had to join the system. For those M.P.A. employees who had been employees of Mystic, their service with Mystic after 1952 (when Mystic's employees came under the Federal old age and survivors' insurance laws) was to ''be allowed as creditable

prior service'' under § 22 as it read prior to St. 1960, c. 525, § 1. After the 1960 statute it was provided that their ''total period of . . . employment'' by Mystic was so to be allowed.

These provisions for pensions and retirement accompanied the transfer of employees, many of whom were not members of the State retirement system, to a new agency carrying on, among other responsibilities, the same functions as Mystic. M.P.A. was being substituted for Mystic as the employer, but under somewhat different statutory provisions. We see no indication in the statute that the State, which itself is not shown theretofore to have assumed directly any pension or retirement burden with respect to Mystic's transferred employees, was intended to do so by the 1956, 1958, and 1960 statutes already mentioned (see fns. 2, 6) because of the creation of M.P.A., except so far as the retirement and disability allowances paid to such former Mystic employees were directly based on previously accrued creditable service as State employees. We view § 22 of the enabling act as requiring M.P.A. to assume the pension and retirement liabilities based on the transferred employees' service with Mystic.

We find nothing in G. L. c. 32, § 3 (8) (c),[7] which requires a different result with respect to M.P.A. employees formerly employees of Mystic. The defendants do not contend that M.P.A. must bear the burden of so much of a pension or retirement allowance (except one under c. 32, § 7 or § 9) as is attributable to creditable service for another State instrumentality which was, during such service, a part of the State retirement system.

---

[7] Section 3 (8) (c), as amended through St. 1960, c. 571, reads in part, ''(c) Whenever any retired member or beneficiary receives a pension or survivor's allowance from a system pertaining to one governmental unit in a case where a portion of such pension or survivor's allowance is attributable to service in a second governmental unit *to which another system pertains,* the first governmental unit shall be reimbursed in full, in accordance with the provisions of this paragraph, by the second governmental unit for such portion of the pension as shall be computed by the actuary. . . . All such payments due under the provisions of this paragraph from the second governmental unit shall be charged to the pension fund of the system pertaining thereto and as received they shall be credited to or appropriated for the pension fund of the system pertaining to the first governmental unit. . . .''

2. What has been said in the preceding section of this opinion applies also to retirement allowances or pensions under G. L. c. 32, §§ 56–60 (fn. 5). There is no greater reason (than in the case of allowances payable under §§ 5, 6, 10 [1], see fn. 3) for regarding service with Mystic by a veteran covered by §§ 56–60 as creditable service chargeable to the Commonwealth rather than to M.P.A. as Mystic's successor. The enabling act (§ 22) does not impose upon the Commonwealth in explicit terms any liability under §§ 56–60 by reason of any employee's service with Mystic. Mystic was not a member of the State retirement system. Retirement privileges under §§ 56–60 are an alternative, available to certain veterans only, to the provisions of §§ 5, 6, and 10 (1). See G. L. c. 32, § 25 (3), as amended through St. 1962, c. 682, § 1. We conclude that the Legislature intended to deal with liabilities under §§ 5, 6, 10, and 56–60, in the same manner.

3. With respect to payments (under c. 32, §§ 7 and 9) of allowances based upon disability and death causally related to employment by M.P.A. (see fn. 4) there is no clear statutory basis for any apportionment of any portion of such payments to the State. These payments seem to us to be directly attributable to employment with M.P.A. after 1959 and a charge related to that employment. Although in some cases (e.g. *Zavaglia* v. *Contributory Retirement Appeal Bd.* 345 Mass. 483, 485–487, lung condition gradually growing worse because of dust in place of employment) disability develops over a period, the point of time at which the situation creates a ground for retirement ordinarily is just prior to retirement. Liability for accidental death benefits (§ 9) is ordinarily similarly closely connected to the latest period of employment. We hold that under § 22 of the enabling act there cannot be apportioned to the State any part of the burden of payments under §§ 7 and 9. The payments, of course, are not directly related to creditable service with the State.

4. M.P.A. contends that, if § 22 is interpreted as making M.P.A. responsible for all the retirement benefits under c. 32, §§ 5, 6, 10 (1), and 56–60, directly based upon credit-

able service with Mystic, then § 22 will be unconstitutional because of the change effected in § 22 by St. 1960, c. 525, § 1. See the first part of the italicized language quoted in fn. 2, par. (a), as affected by the language quoted in fn. 2, par. (b). The 1960 amendment purported to afford to M.P.A. employees, formerly employed by Mystic, creditable service for "the total period of their prior employment" with Mystic instead of only for "the period of . . . [that prior] employment" between 1952 and 1959 when Mystic employees were "under federal old age and survivors insurance laws." M.P.A. issued its revenue bonds on February 17, 1959, pursuant to St. 1956, c. 465, especially §§ 6–16, inclusive, as amended by St. 1958, c. 599, §§ 4–9, inclusive.

Unquestionably the increase in the prior creditable service of former Mystic employees by the 1960 act will tend to increase to some extent (on our interpretation of § 22) the annual operating expenses of M.P.A. over what they would have been if the 1960 statute had not been enacted. We think, however, that this increase does not effect any substantial or unconstitutional impairment of the security behind M.P.A.'s revenue bonds. The contract underlying these bonds was necessarily made subject to the possibility that subsequent legislation, for proper purposes affecting the public interest, might in some degree affect M.P.A.'s revenues. See *Opinion of the Justices,* 334 Mass. 721, 736–738. See also the discussion at pp. 740–741. The principles governing the type of subsequent legislative regulation which may not be precluded by a legislatively authorized contract are fully discussed in *Opinion of the Justices,* 341 Mass. 760, 783–786. There the Justices refused (p. 786) to interpret proposed legislation "as granting power to make inviolable by later legislation . . . provisions . . . which deal with matters of general regulation of the community in a manner closely related to its health, morals, safety, and fundamental welfare." We think that reasonable legislative alterations in the arrangements by which M.P.A. pays pensions to its employees may be made "within . . . the police power." Such changes may be re-

garded as serving a public purpose by placing at a reasonable level, giving weight to the whole of their public or quasi-public service, the retirement allowances of employees of a public instrumentality. See *Horrigan* v. *Mayor of Pittsfield,* 298 Mass. 492, 497–498; *Opinion of the Justices,* 320 Mass. 773, 781. See also *Opinion of the Justices,* 278 Mass. 607, 611. The proper exercise of the police power in this manner does not constitute either an impairment of the obligation of the bond contract or a deprivation, without due process of law, of the property either of M.P.A. as a public instrumentality or of its bondholders.

5. A final decree is to be entered declaring: (a) that M.P.A. is to reimburse the Commonwealth for that proportion of the amounts expended by the Commonwealth for retirement allowances to or on account of each M.P.A. former employee, under G. L. c. 32, §§ 5, 6, and 10 (1), which (i) the period of creditable service of such employee, as an employee of M.P.A. and as an employee of Mystic, bears to (ii) the total period of creditable service of such employee; (b) that M.P.A. is to reimburse the Commonwealth for the full amount expended by the Commonwealth and paid to or on account of each M.P.A. employee for benefits based, in accordance with c. 32, § 7, upon a disability causally related to such employee's employment by M.P.A., or, in accordance with c. 32, § 9, upon such employee's death from causes arising from employment by M.P.A.; and (c) that the Commonwealth is to reimburse M.P.A. for that proportion of the amounts expended by M.P.A. for benefits to or on account of each of its employees paid in accordance with c. 32, §§ 56–60, which (i) the period of such employee's creditable service for the Commonwealth (but not including service for Mystic) bears to (ii) the total period of such employee's service. The final decree shall adjust the accounts and payments by the Commonwealth and M.P.A. referred to in the pleadings and in the statement of agreed facts in accordance with the principles thus declared. The case is remanded to the Superior Court for the entry of a final decree in accordance with the foregoing declarations and this opinion.

*So ordered.*