CITY OF BOSTON & others[1] vs. KEENE CORPORATION & others[2]; ATTORNEY GENERAL, intervener.

Suffolk. October 2, 1989. - December 14, 1989.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Hazardous Substance. Limitations, Statute of. Practice, Civil,* Declaratory proceeding. *Jurisdiction,* Declaratory relief. *Constitutional Law,* Legislation favoring individual, Special law, Equal protection of laws, Public purpose, Separation of powers. *Due Process of Law,* Statute of limitations, Substantive rights. *Statute,* Special law, Retroactive statute.

In an action by the city of Boston and other governmental plaintiffs seeking to recover from manufacturers and sellers of asbestos products the costs of removing those products from certain public buildings, the defendants' counterclaim challenging the constitutional validity of the special limitation periods provided by St. 1986, c. 336, presented an appropriate subject for declaratory relief, even though it was not established that the ordinary limitations period applicable to one or more of the plaintiffs' claims had run. [304-305]

Statute 1986, c. 336, establishing a six-year limitations period for claims arising from "asbestos related corrective actions" brought by the Commonwealth or any of its political subdivisions, and providing a four-year period during which any such claim "which would otherwise be barred" may be brought, did not, by conferring a benefit on governmental entities, constitute improper special legislation prohibited by art. 10 of the Massachusetts Declaration of Rights. [306-308]

Statute 1986, c. 336, establishing a six-year limitations period for claims arising from "asbestos related corrective actions" brought by the Commonwealth or any of its political subdivisions, and providing a four-year period during which any such claim "which would otherwise be barred" may be brought, violated no due process principle embodied in art. 10 of the Massachusetts Declaration of Rights by reason of the statute's special impact on the manufacturers and sellers of asbestos related

---

[1]The school committee of Boston, the Boston Redevelopment Authority, and the collector and treasurer of the city of Boston.

[2]Seventeen other corporations or companies that have manufactured and sold asbestos products.

products, where it implicated neither a fundamental right nor a suspect classification and where it bore a reasonable relation to a permissible legislative objective, namely, that of protecting the public treasury against the cost of removing and replacing asbestos in public buildings. [308-311]

Statute 1986, c. 336, in reviving certain claims by governmental entities for "asbestos related corrective actions," after such claims were barred by the running of the applicable limitations period, infringed no State due process right of the manufacturers and sellers of asbestos products, as embodied in arts. 1, 10, and 12 of the Massachusetts Declaration of Rights. [311-313]

Statute 1986, c. 336, establishing a six-year limitations period for claims arising from "asbestos related corrective actions" brought by the Commonwealth or any of its political subdivisions, and providing a four-year period during which any such claim "which would otherwise be barred" may be brought, did not violate art. 30 of the Massachusetts Declaration of Rights, preserving the separation of the powers of government, or art. 20, concerning the improper suspension of a law by the Legislature. [313-314]

CIVIL ACTION commenced in the Superior Court Department on March 27, 1986.

The case was heard by *John L. Murphy, Jr.,* J., on a motion for partial summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Rory FitzPatrick* for National Gypsum Company & others.

*Stanley J. Levy* of New York (*Steven P. Perlmutter* with him) for the city of Boston & others.

*William L. Pardee,* Assistant Attorney General, for the Attorney General, intervener.

*Lawrence G. Cetrulo,* for Armstrong World Industries, was present but did not argue.

*Richard M. Bluestein & Janet Steckel Lundberg,* for Boston Housing Authority, amicus curiae, submitted a brief.

GREANEY, J. In this case, the defendants, eighteen named manufacturers of asbestos-containing products, challenge the constitutionality (under various provisions of the Declaration of Rights of the Massachusetts Constitution) of St. 1986,

c. 336 (set forth in full below),[3] which (1) establishes a six-year limitations period for "asbestos related corrective actions" brought by the Commonwealth or any of its political subdivisions, and (2) provides a four-year period during which any such action "which would otherwise be barred" may be brought. After deciding that a suitable controversy exists that ought to be determined by a declaration of rights under G. L. c. 231A, we conclude that St. 1986, c. 336, is constitutional.

The background of the case is as follows. The city of Boston, joined by the other plaintiffs, filed suit against the defendants in the Superior Court on March 27, 1986, seeking to recover the costs of removing asbestos from certain public buildings in Boston. The complaint is now proceeding on theories of negligence, nuisance, and breach of express and implied warranties. The defendants denied any liability, and in their answers raised a number of affirmative defenses, among them that the statute of limitations applicable to each particular claim had run and barred the cause of action.

---

[3]"SECTION 1. Chapter 260 of the General Laws is hereby amended by inserting after section 2C the following section:

"Section 2D. Any action brought by or on behalf of any county, city, town, regional school district, housing authority or the commonwealth or any other political subdivision thereof to recover any costs associated with asbestos related corrective actions including, but not limited to, the removal and replacement of asbestos and materials containing asbestos shall be commenced only within six years next after such county, city, town, regional school district, housing authority or the commonwealth or any other political subdivision thereof knew of the presence of and the hazard or damage caused by the presence of such asbestos or material containing asbestos within its buildings.

"SECTION 2. Notwithstanding the provisions of section two D of chapter two hundred and sixty of the General Laws, inserted by section one of this act, any county, city, town, regional school district, housing authority, or the commonwealth or any other political subdivision may commence an action to recover any costs associated with asbestos related corrective actions including but not limited to, the removal and replacement of asbestos and materials containing asbestos, which would otherwise be barred as a result of the expiration of the applicable period of limitation of action at any time prior to July first, nineteen hundred and ninety; provided, however, that such action is commenced prior to July first, nineteen hundred and ninety."

On July 22, 1986, St. 1986, c. 336, was signed into law
(effective ninety days later). In October of 1987, the defend-
ants filed an amended answer containing counterclaims by
which they sought, among other relief, a declaration under
G. L. c. 231A, that St. 1986, c. 336, was unconstitutional
under various provisions of the Declaration of Rights of the
Massachusetts Constitution. The defendants moved for sum-
mary judgment on their counterclaims pursuant to Mass. R.
Civ. P. 56(a), 365 Mass. 824 (1974). After hearing, a judge
of the Superior Court ordered that the counterclaims "be dis-
missed on the merits." The judge also decided under Mass.
R. Civ. P. 54(b), 365 Mass. 821 (1974), that there was "no
just reason for delay," and he directed the entry of an imme-
diate judgment dismissing the counterclaims. The defendants
took a timely appeal.

1. The Attorney General argues that an "actual con-
troversy" suitable for declaratory judgment under G. L.
c. 231A does not exist. He contends that, until it has been
established that the ordinary limitations period applicable to
one or more of the plaintiffs' claims has run, there is no basis
to consider the validity of St. 1986, c. 336.

The "actual controversy" requirement of G. L. c. 231A,
§ 1, is to be liberally construed, see *Massachusetts Ass'n of
Independent Ins. Agents & Brokers, Inc.* v. *Commissioner of
Ins.*, 373 Mass. 290, 293 (1977), and a party seeking declar-
atory judgment need not demonstrate an actual impairment
of rights. See *School Comm. of Cambridge* v. *Superinten-
dent of Schools of Cambridge*, 320 Mass. 516, 518 (1946).
Rather, we require only that the pleading "set forth a real
dispute caused by the assertion by one party of a legal rela-
tion or status or right in which he has a definite interest and
the denial of such assertion by the other party, where the
circumstances . . . indicate that, unless a determination is
had, subsequent litigation as to the identical subject matter
will ensue." *Hogan* v. *Hogan*, 320 Mass. 658, 662 (1947).
See *School Comm. of Cambridge* v. *Superintendent of
Schools of Cambridge, supra* at 518. Further, an express
purpose of declaratory judgment is to "afford relief from . . .

uncertainty and insecurity with respect to rights, duties, status and other legal relations." G. L. c. 231A, § 9. Cf. *Wellesley College* v. *Attorney Gen.,* 313 Mass. 722, 731 (1943).

This case raises questions of considerable importance concerning matters of public health and safety, and it involves potential damages awards possibly totalling as much as several hundred million dollars. Resolution of the constitutional validity of St. 1986, c. 336, will serve to expedite decision in the trial court of what may be a very lengthy case by focusing the parties on issues other than the statute's possible application. There is a measure of discretion in deciding whether a case is appropriate for declaratory relief. We conclude that the judge acted properly in deciding that there existed a controversy over St. 1986, c. 336, which should be put to rest by a prompt declaration of rights.

2. We begin our analysis of the constitutional issues presented in this case by noting the difficult burden the defendants face. In asking us to strike down St. 1986, c. 336, as unconstitutional, the defendants run squarely into the settled rule that a reviewing court must grant all rational presumptions in favor of the constitutionality of a legislative enactment. See *Paddock* v. *Brookline,* 347 Mass. 230, 232 (1964); *Druzik* v. *Board of Health of Haverhill,* 324 Mass. 129, 138-139 (1949). The sole issue is whether the statute falls within the legislative power to enact, not whether it comports with a court's idea of wise or efficient legislation. See *Zeller* v. *Cantu,* 395 Mass. 76, 85 (1985); *Klein* v. *Catalano,* 386 Mass. 701, 710 n.11 (1982); *Opinion of the Justices,* 368 Mass. 880, 886 n.1 (1975). The party challenging the statute's constitutionality must demonstrate beyond a reasonable doubt, see *Klein* v. *Catalano, supra* at 706-707, that there are no "conceivable grounds" which could support its validity. See *Zeller* v. *Cantu, supra* at 84; *Commonwealth* v. *Franklin Fruit Co.,* 388 Mass. 228, 235 (1983).

With these principles in mind, we proceed to the constitutional issues presented for determination. The defendants raise two primary arguments against the constitutionality of St. 1986, c. 336: (1) the statute violates art. 10 of the Decla-

ration of Rights (the classification claim);[4] and (2) the stat-
ute violates the substantive due process provisions of the
Massachusetts Constitution by reviving claims on which the
statute of limitations already has run (the revival claim.)[5]

3. With respect to the classification claim, the defendants
first argue that St. 1986, c. 336, violates the first sentence of
art. 10 of the Declaration of Rights, which provides that
"[e]ach individual of the society has a right to be protected
by it in the enjoyment of his life, Liberty and property, ac-
cording to standing Laws."[6] The constitutional infirmity,
contend the defendants, lies in the fact that St. 1986, c. 336,
constitutes improper special legislation. We disagree.

Article 10 prohibits the Legislature from enacting special
legislation which "single[s] out any person for special privi-
leges or advantages at the expense of the rights of another,"
*Sciuto* v. *Lawrence*, 389 Mass. 939, 944 (1983), ensuring
thereby the constitutional principle that all similarly situated
citizens of a society are governed under generally applicable

---

[4]The first paragraph of art. 10 is involved in this case. That paragraph
reads as follows:

"Each individual of the society has a right to be protected by it in
the enjoyment of his life, Liberty and property, according to stand-
ing Laws. He is obliged, Consequently, to contribute his share to the
expense of this protection; to give his personal service, or an
equivalent, when necessary: But no part of the property of any indi-
vidual, can, with justice, be taken from him, or applied to public
uses, without his own consent, or that of the representative body of
the people. In fine, the people of this Commonwealth are not con-
trollable by any other Laws than those to which their Constitutional
representative body have given their consent. And whenever the pub-
lic exigencies require that the property of any individual should be
appropriated to public uses, he shall receive a reasonable compensa-
tion therefor."

[5]The defendants also raise arguments under art. 20 (suspension of the
laws) and art. 30 (separation of powers) of the Declaration of Rights, and
under the equal protection provisions of the Massachusetts Constitution.
We view these claims as subsidiary to the two primary contentions de-
scribed above.

[6]We have interpreted "standing laws" to mean enacted legislation of
general application. See *Commissioner of Pub. Health* v. *Bessie M. Burke
Memorial Hosp.*, 366 Mass. at 742.

laws. We have made it clear, however, that art. 10 cannot be applied mechanically. The mere fact that a statute constitutes special legislation[7] rather than general legislation does not render it unconstitutional per se. See *Boston Gas Co.* v. *Department of Pub. Utils.*, 387 Mass. 531, 536-537 (1982) (noting that art. 10 is not automatically violated by a statute which applies only to an individual or a small group); *Commissioner of Pub. Health* v. *Bessie M. Burke Memorial Hosp.*, 366 Mass. 734, 740 (1975) (affirming the Legislature's power to enact special legislation). We have said that the Legislature may go so far as to confer an outright bounty on selected individuals "if some public purpose is promoted, [that is] if the statute is 'for the good and welfare' of the Commonwealth (Constitution, Part II, c. 1, § 1, art. 4), as to which the Legislature's judgment will weigh heavily." *Commissioner of Pub. Health* v. *Bessie M. Burke Memorial Hosp.*, *supra* at 744. See *Opinion of the Justices*, 354 Mass. 799, 801 (1968); *Wachusett Regional School Dist. Comm.* v. *Erickson*, 353 Mass. 77, 80 (1967); *Gray* v. *Salem*, 271 Mass. 495, 498 (1930).

Statute 1986, c. 336, does not fit the pattern of those cases in which, because of a benefit to a person singled out, this court has found a violation of the prohibition of the first sentence of art. 10. The 1986 act applies to a wide range and large number of governmental entities. In addition to the Commonwealth, it applies to all fourteen counties, thirty-nine cities, three hundred twelve towns; numerous school, water, and fire districts; every housing authority; and each and every other political subdivision in the Commonwealth. Perhaps the act raises due process of law issues because of its impact on the defendants, a point we shall come to. It is not, however, an example of special legislation violative of the prohibition of the first sentence of art. 10 of the Declaration

---

[7] By "special legislation," we mean "legislation addressed to a particular situation, that does not establish a rule of future conduct with any substantial degree of generality, and may provide ad hoc benefits of some kind for an individual or a number of them." *Commissioner of Pub. Health* v. *Bessie M. Burke Memorial Hosp.*, 366 Mass. 734, 740 (1975).

of Rights. We have never held that legislation benefiting such a large number of entities is subject to the prohibition, and decline to do so in this case.

The defendants' art. 10 arguments also raise issues concerning due process of law in view of the special impact of the statute on them. It has been stated that the considerations relevant to art. 10 review are virtually identical to those under the Fourteenth Amendment to the United States Constitution.[8] See *Opinion of the Justices*, 373 Mass. 883, 885 (1977); *Commissioner of Pub. Health* v. *Bessie M. Burke Memorial Hosp.*, 366 Mass. 734, 744 & n.18 (1975). See also *Opinion of the Justices*, 354 Mass. 799, 802-803 (1968) (construing art. 10 and the Fourteenth Amendment synonymously). Because St. 1986, c. 336, implicates neither a fundamental right nor a suspect classification,[9] it can violate the due process provisions of art. 10 only if it can be shown that the act lacks a "reasonable relation to a permissible legislative objective." *Zeller* v. *Cantu, supra* at 84, quoting *Pinnick* v. *Cleary*, 360 Mass. 1, 13 (1971).[10] There has been no such showing.

---

[8]We have also observed that the due process provisions of the Massachusetts Constitution, see arts. 1, 10, 12 of the Declaration of Rights, afford protection comparable to that supplied by the Fourteenth Amendment, especially in the cases of economic regulation such as that contained in the statute challenged here. See *Klein* v. *Catalano*, 386 Mass. 701, 707 n.6 (1982). See also *Zeller* v. *Cantu*, 395 Mass. 76, 83-84 (1985) (applying the same standard of review and reaching the same result under the due process provisions of the Massachusetts and Federal Constitutions); *Lowell Gas Co.* v. *Department of Pub. Utils.*, 324 Mass. 80, 86-88 (1949) (same). See also *School Comm. of Hatfield* v. *Board of Educ.*, 372 Mass. 513, 514-515 (1977) (indicating that art. 10 is in fact one of the provisions from which the due process provisions of the Federal Constitution are derived).

[9]There is no argument that the ability to rely on an immutable limitations period constitutes a fundamental right, nor that the defendants, asbestos manufacturers, constitute a suspect class.

[10]The standard of review of equal protection claims under the Massachusetts Constitution is identical. See *Hallett* v. *Wrentham*, 398 Mass. 550, 557-558 (1986). Thus, our analysis of the due process claims is equally dispositive of the defendants' equal protection challenge to St. 1986, c. 336, under the Federal Constitution.

The record before us indicates that asbestos in public buildings poses a significant hazard that should be promptly corrected. In connection with that goal, the Legislature legitimately could have decided that protecting the public treasury against the monumental cost of removing and replacing asbestos in public buildings justified enacting an extended limitations period solely for the benefit of public plaintiffs. In the instant case alone, the claims brought against the defendants involve some 100 public buildings and asbestos-related costs of more than $400 million. The desire to protect the public treasury against such enormous liability in seeking to redress a serious health hazard is a legitimate government objective. See *Hallett* v. *Wrentham*, 398 Mass. 550, 558 (1986) (holding that "[p]rotecting public funds from unlimited liability is a legitimate legislative purpose").

The fact that St. 1986, c. 336, does not accord similar benefit to private plaintiffs does not undermine the legitimacy of this governmental interest. The Legislature could well have concluded that the asbestos problem was most acute in public buildings, and thus decided to address that aspect of the crisis first. "When legislative authority is exerted within a proper area, it need not embrace every conceivable problem within that field. The Legislature may proceed one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." *Mobil Oil Corp.* v. *Attorney Gen.*, 361 Mass. 401, 417 (1972). See *Zeller* v. *Cantu*, 395 Mass. 76, 84 (1985); *Klein* v. *Catalano*, 386 Mass. 701, 717 (1982).

Further, the Legislature was warranted in treating asbestos-related claims of governmental agencies differently from private claims with respect to the timeliness of the institution of law suits. In the instance of public entities, responsibility for the detection of wrongs and for the initiation of law suits is often diffuse. The matter of when a public entity knew or reasonably should have known that a particular wrong had been committed is complicated because the person whose knowledge is controlling may not be readily identifiable. A

legislative judgment to treat governmental entities differently from private entities is rational for this reason alone.[11]

The principal cases upon which defendants rely in support of their contention that St. 1986, c. 336, violates art. 10 are distinguishable. In *Holden* v. *James*, 11 Mass. 396 (1814), we declared invalid under art. 10 a statute which purported to enlarge in favor of a single named individual the period of limitations which would have applied to defeat his action against an administrator. Similarly, in *Paddock* v. *Brookline*, 347 Mass. 230 (1964), we found an art. 10 violation where a statute purported to permit a named individual to bring a personal injury suit against Brookline, notwithstanding the fact that she had failed to give notice of her suit as required by statute. The constitutional infirmity in both these cases lay in the fact that no even arguably valid public purpose was served by the statutes in question. Rather, "the only public advantage [was] incident and collateral to the relief of a private citizen." *Gray* v. *Salem*, 271 Mass. 495, 498 (1930). See *Commissioner of Pub. Health* v. *Bessie M. Burke Memorial Hosp.*, *supra* at 744 (reasoning that special statute which promotes "some public purpose" would lie at the "opposite extreme from the *Holden* or like cases"). As such, the statutes in the *Holden* and *Paddock* decisions could not survive even minimal rational basis scrutiny, and thus

---

[11]The statute books, both State and Federal, contain many examples of the government granting itself preferences over private parties. See, e.g., G. L. c. 258 (1988 ed.) (Massachusetts Tort Claims Act, which limits State tort liability to $100,000 and establishes other procedural constraints on suits against public entities); 11 U.S.C. § 507 (a)(7) (Supp. 1989) (granting priority to tax claims of Federal and State governments over certain other unsecured creditors in bankruptcy situations). Both of these statutes have been upheld against constitutional due process or equal protection challenges. See *Hallett* v. *Wrentham*, 398 Mass. 550 (1986) ($100,000 limit on government tort liability provided for in G. L. c. 258, § 2, does not violate equal protection); *In re Jay & Dee Store Co.*, 37 F. Supp. 989 (E.D. Pa. 1941) ("There can be no doubt that Congress has the power to regulate and change [bankruptcy] priority rights . . . without violation of the fifth constitutional amendment where the changes are consonant with a fair reasonable and equitable distribution of the assets of a bankrupt estate" [citation omitted]).

were declared beyond the competence of the Legislature to enact.

For the reasons expressed, we conclude that St. 1986, c. 336, is not improper special legislation and is rationally related to a legitimate government objective. The act, therefore, is constitutional under art. 10 of the Declaration of Rights.

4. With respect to the revival claim, the defendants argue that St. 1986, c. 336, violates their substantive due process rights contained in arts. 1, 10, and 12 of the Declaration of Rights insofar as the statute purports to revive claims already barred by the running of the applicable limitations period.[12] We conclude that there is no constitutional violation.

Statutes with retroactive application are not per se unconstitutional. See *Massachusetts Port Auth.* v. *Treasurer & Receiver Gen.*, 352 Mass. 755, 762-763 (1967). As Chief Justice Holmes observed long ago, "multitudes of cases have recognized the power of the Legislature to call a liability into being where there was none before, if the circumstances were such as to appeal with some strength to the prevailing views of justice, and if the obstacle in the way of the creation seemed small." *Danforth* v. *Groton Water Co.*, 178 Mass. 472, 477 (1901). See *Dunbar* v. *Boston & Providence R.R.*, 181 Mass. 383, 386 (1902); *Garfield* v. *Bemis*, 2 Allen 445, 447 (1861). The constitutionality of retroactive legislation, such as a statute which revives barred asbestos-related claims, turns on an analysis of (1) the nature of the public

---

[12]The defendants also raise a statutory interpretation argument to the effect that St. 1986, c. 336, by its own terms, does not operate to revive previously barred claims. This argument lacks merit. By its plain language, St. 1986, c. 336, § 2, permits plaintiffs to bring claims "which would otherwise be barred as a result of the expiration of the applicable period of limitation of action *at any time prior to July first, nineteen hundred and ninety*" (emphasis added). Construing the statutory language according to its plain meaning, as we must, see *Commonwealth* v. *Colon-Cruz*, 393 Mass. 150, 167 (1984), we conclude that § 2 operates to revive all asbestos claims on which the limitations period already has run, or will run at any time prior to July 1, 1990. To reach any other conclusion would effectively read the words "at any time" out of the statute.

interest which prompted the Legislature to enact the challenged statute; (2) the nature of the right the statute affects retroactively; and (3) the extent and scope of that effect. See *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.*, 374 Mass. 181, 191 (1978). The judgment of the Legislature on these matters is entitled to considerable deference. See *Commonwealth* v. *Franklin Fruit Co.*, 388 Mass. 228, 235 (1983); *Pinnick* v. *Cleary*, 360 Mass. 1, 14 (1971). We discuss each factor.

In evaluating the public interest involved in a given case, we inquire "whether the Legislature could have regarded that the provisions of the [challenged] statute dealt with matters of general regulation of the community in a manner closely related to its health, morals, safety, and fundamental welfare." *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.*, *supra* at 191. It is abundantly clear that the problem to which St. 1986, c. 336, is addressed, prompt correction of the dangers presented by the widespread presence of asbestos in public buildings, is intimately related to the "health," "safety," and "fundamental welfare" of our citizens. As we have indicated, the record before us contains ample justification for the legislative conclusion that asbestos is highly toxic and that the public health and welfare require strong and immediate action to abate its hazards. Allowing those who are required to correct the presence of asbestos in their buildings to seek a right of reimbursement against others who may be more directly responsible can be a legitimate part of a legislative program to deal with the problem.

The right at issue is the ability of the defendants to avoid claims being brought against them by plaintiffs who have engaged in asbestos corrective measures by arguing that the statute of limitations applicable to those claims has run. To the extent that it applies retroactively, St. 1986, c. 336, effectively divests defendants, and others similarly situated, of this potential defense. However, the defendants' interest in the limitations defense is procedural rather than substantive. We have held that, in cases not involving claims to real property, the running of the applicable limitations period bars

only the legal remedy, while leaving the underlying cause of action unaffected. See *Mulligan* v. *Hilton*, 305 Mass. 5, 11 (1940); *Wright* v. *Oakley*, 5 Met. 400, 409 (1843). Consequently, the running of the limitations period on such claims does not create a vested right which cannot constitutionally be taken away by subsequent statutory revival of the barred remedy. See *Mulligan* v. *Hilton, supra* at 12; *Wright* v. *Oakley, supra* at 410. See also *Campbell* v. *Holt*, 115 U.S. 620 (1885) (reaching the same result under the Fourteenth Amendment to the United States Constitution). The defendants' interest in a procedural bar which does not rise to the level of a vested right must yield to the far weightier public interest of remedying the grave public health threat posed by the presence of asbestos. Cf. *Borden, Inc.* v. *Commissioner of Pub. Health*, 388 Mass. 707 cert. denied sub nom. *Formaldehyde Inst.* v. *Commissioner of Pub. Health*, 464 U.S. 936 (1983) (concluding that public health interest in removing hazardous urea-formaldehyde foam insulation overrides the manufacturers' interest in integrity of contracts).

Finally, the scope of St. 1986, c. 336, is reasonable given the extreme importance of the public interest and the comparative insignificance of the defendants' interest in a limitations defense. The statute does no more than remove a procedural defense upon which defendants otherwise might rely. It does not predetermine that the defendants will be found liable for any asbestos removal and replacement costs, and thus is narrower in impact than regulatory measures we have upheld against similar challenge. See, e.g., *Borden, Inc.* v. *Commissioner of Pub. Health, supra* (upholding regulation requiring suppliers of urea-formaldehyde foam insulation to remove it from buildings and refund its purchase price).

5. The defendants' remaining constitutional arguments may be dealt with summarily. Statute 1986, c. 336, does not violate art. 30 of the Declaration of Rights, which preserves the separation of powers, because in enacting it the Legislature did not attempt to alter the outcome of a completed judicial or administrative proceeding. See *Spinelli* v. *Commonwealth*, 393 Mass. 240 (1984); *Commissioner of Pub.*

*Health* v. *Bessie M. Burke Memorial Hosp., supra* at 746-747; *Weingartner* v. *North Wales*, 327 Mass. 731, 737 (1951). The defendants' challenge under art. 20 of the Declaration of Rights, which concerns the improper suspension of a law by the Legislature, relies on the same analysis, and several of the same precedents, as does their art. 10 argument. We consider any art. 20 issues to have been dealt with by our analysis of the art. 10 claims.

6. As a declaratory judgment was properly requested by the defendants, a judgment dismissing their counterclaims should not have entered. The judgment is vacated. A new judgment is to be entered which declares that St. 1986, c. 336, does not violate any of the constitutional provisions raised by the defendants.

*So ordered.*