SANDERS, Janet L., J.
This case arises from legal malpractice allegedly committed by a large Boston law firm, Bingham McCutchen, LLP (“Bingham”) in its representation of Frank H. McCourt, Jr. (“McCourt”), owner of the Los Angeles Dodgers. McCourt is not the plaintiff in this action, however. Instead, in what appears to be a preemptive strike, Bingham has sued McCourt in this Court seeking a declaratory judgment that it is not liable. McCourt now moves to dismiss this action on the grounds that it constitutes a misuse of the Declaratory Judgment Act, G.L.c. 231A, §1. This Court agrees, and therefore concludes that the Motion should be Allowed, for reasons set forth below.
BACKGROUND
Because this Motion is asserted in lieu of an Answer and before any discovery in the case, this Court takes as true all of the allegations in the Complaint. They can be summarized as follows. Beginning in 2001, McCourt and his wife Jamie (“Mrs. McCourt”) sought legal advice from time to time from Lawrence Silverst-ein, an attorney at Bingham. In 2003, Silverstein assisted McCourt in acquiring the Los Angeles Dodgers. Mrs. McCourt had some concern that the acquisition could expose other assets of the couple to *47 creditors expected to lend money in connection with the purchase. She and her husband consulted with Silverstein, who drafted a Marital Property Agreement (the “MPA”). As the title to the contract implied, it set forth which assets belonged to Mrs. McCourt and which assets belonged to her husband. Although divorce was not contemplated at that point, the MPA also specified that each of the McCourts would keep his or her respective property in the event of divorce. In the absence of such an agreement, the property could be considered community property under the laws of California, where the McCourts intended to reside.
On March 31, 2004, Silverstein met with the McC-ourts at their Brookline home to review the MPA. At the end of the meeting, the McCourts each signed three copies, and Mrs. McCourt signed an additional three copies. On April 14, McCourt signed three more copies of the MPA when he was in California. Attached to each copy of the MPA were two schedules, one of which (“Exhibit A”) listed the separate property of McCourt. Although all of the copies of the agreements signed by the McCourts were identical, Exhibit A attached to the copies was not. One version of Exhibit A provided that the Los Angeles Dodgers would be the sole property of McCourt; another version provided precisely the opposite.[1]
This discrepancy between the exhibits became critically important when, after a period of increasing marital estrangement, Mrs. McCourt filed for divorce in the Superior Court of Los Angeles County, California in 2009. A trial was scheduled concerning the validity of the MPA in the context of California community property laws. Sometime before this (the Complaint does not say precisely when), Silverstein discovered the discrepancy in the different versions of Exhibit A attached to the signed copies of the MPA, and took it upon himself to substitute what he regarded as the correct version so that all copies of the MPA, together with their attachments, conformed with one another. He did not inform the McCourts of his discovery and substitution.
At trial, the discrepancy came to light, with Silverst-ein testifying as to what he had done. In December 2010, the California Superior Court judge ruled that the MPA was unenforceable because there was not enough evidence to show a “meeting of the minds” between the McCourts, each of whom took a different view of what it was they had agreed to. Silverstein also came in for criticism by the Court. Since the trial, McCourt has (according to the Complaint) repeatedly threatened to sue Bingham for damages that he claims resulted from Silversteiris preparation of the MPA and has refused to pay outstanding legal bills due to Bingham for a variety of business and personal engagements. The Complaint does not seek to collect on these legal bills, however. Instead, in a single count, the Complaint seeks a declaration that the “services performed by Bingham met the standard of care for professionals providing legal representation,” and that the law firm’s conduct did not cause McCourt to suffer any loss with respect to his ownership of the Dodgers.
DISCUSSION
The Declaratory Judgment Act (the “Act”) gives the Superior Court jurisdiction in “appropriate proceedings” to “make binding declarations of right, duty, status, and other legal relations sought thereby, either before or after a breach or violation thereof has occurred in any case in which an actual controversy has arisen . . .” G.L.c. 231A, §1. Section 2 of the Act describes the type of controversy to which declaratory judgment is applicable: it includes any dispute regarding rights, duties or other legal relations arising under a contract “or under the common law ...” Finally, Section 3 of the Act states that the court “may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceedings, or for other sufficient reasons." (Emphasis added.) Thus, the grant of jurisdiction to the Superior Court is broad, limited only by the requirement of an actual controversy. At the same time, the court has broad discretion to refuse relief and decline to hear the matter.[2] In the instant case, this Court concludes in its discretion that this is not an appropriate case for declaratoiy relief. There are many reasons for that conclusion.
First and foremost, the declaratory judgment procedure has never been used in Massachusetts to allow an individual or entity accused of a tort to preemptively sue the alleged victim. There is good reason for this lack of precedent: to permit the reversal of roles in a negligence action and to allow the tortfeasor to sue first would upset the traditional right that our judicial system gives to the injured plaintiff to choose when and where to litigate. As one federal circuit court stated, to decide otherwise would be a “perversion of the Declaratoiy Judgment Act” not in keeping with its purposes. Cunningham Bros, Inc. v. Bail, 407 F.2d 1165, 1168-69 (7th Cir. 1969). The same conclusion was reached in Friedman v. Geller, 925 F.Sup. 611 (E.D.Wis. 1996), which, like the instant case, involved a request by the attorney plaintiff for a declaration that he did not commit legal malpractice. Noting that “malpractice presents no special issues,” the district court held that it was “inappropriate to use the declaratoiy judgment statute in what would otherwise be a run of the mill negligence action.” 925 F.Sup. at 613. Thus, although the Act may be broad enough to give this Court jurisdiction over this action — referencing as it does rights arising under the “common law” — that does not mean that this Court should allow it to proceed.
Plaintiff argues that, if there is no Massachusetts precedent for allowing this turning of the tables, there is also no precedent which forbids it. This argument ignores the fact that the courts in virtually eveiy state *48 where this issue has been presented have declined to allow an individual or entity accused of a tort to use the declaratory judgment procedure to beat the alleged victim of the tort to the courthouse. Mammoth Medical, Inc. v. Bunnell, 265 S.W.3d 205 (Ky. 2008) (rejecting attorney’s request for declaration that he did not commit legal malpractice); Williams v. Manzella, 21 So.3d 1048 (La.Ct.App. 2009) (same); see also Trantham v. Isaacks, 218 S.W.3d 750, 753 (Tx.Ct.App. 2007); Coca Cola Bottling Co., Consol. v. Durham Coca Cola Bottling Co., 141 N.C.App. 569, 541 S.E.2d 157, 164 (N.C.Ct.App. 2000); Bankers & Shippers Ins. Co. of New York v. Kildow, 9 Ark.App. 86, 92, 654 S.W.2d 600, 602 (1983); Volkswagenwerk, A.G. v. Watson, 181 lnd.App. 155, 390 N.E.2d 1082 (1979); Baker v. Miller, 33 OhioApp.2d 248, 294 N.E.2d 901 (1972); Tenn. Farmers Mut. Ins. Co., v. Hammond, 200 Tenn. 106, 290 S.W. 860 (1956). Federal courts, interpreting the Federal Declaratory Judgment Act, have reached the same conclusion. See e.g. St. Paul Fire & Marine Ins. Co. v. Tug E. COAST 2002 WL 1906912 (E.D.La. Aug. 20, 2002); Dow Jones & Co., v. Harods, Ltd., 237 F.Sup.2d 394, 426-27 (S.D.N.Y. 2002); Morrison v. Parker, 90 F.Sup. 876, 880 (W.S.D.Mich. 2000). Plaintiff suggests that these decisions should be given no weight by this Court, because the statutes being interpreted were different from the Act, specifically not as broad. But those decisions did not turn on whether the declaratory judgment statute was broad enough to give the court jurisdiction over the controversy. Instead, they turned on whether the court should exercise its discretion to hear it. If anything, the Act confers even broader discretion on this Court than statutes in those other states.
The advantage of timing and forum is particularly important here. McCourt lives in California and the malpractice claim will almost certainly raise questions of California law. He is also still in the midst of contentious divorce proceedings in addition to ongoing disputes with Major League Baseball relating to his ownership of the Dodgers. Fighting multiple legal battles simultaneously is hardly desirable, particularly if those battles are talcing place in different states. Moreover, because McCourt’s claim for damages due to the alleged malpractice depends in large part on how these other disputes are resolved, he has good reason to wait before he brings suit. When McCourt chooses to sue Bingham — indeed, whether to sue at all — is a decision which will not be lightly made, since a suit over Bingham’s representation will necessarily require Mc-Court to waive his privilege as to attorney-client communications. Such communications could then be used against him in these other disputes, thus putting McCourt to a Hobson’s choice of limiting his claim against Bingham so as to limit any waiver, or challenging Bingham’s conduct more broadly, at the price of giving up the privilege which protects attorney-client communications from disclosure.
Bingham claims that McCourt has waived any possible privilege as to his communications with Silverst-ein in 2004, because he has already testified to those communications in the divorce trial. That assumes, of course, that the malpractice claim will be confined to Silverstein’s dealings with the McCourts in 2004. Where the Complaint seeks a broad declaration as to Bingham’s professional services generally, it seems likely that McCourt would be forced into waiving the privilege in connection with communications up until 2010, since Silverstein continued to represent McC-ourt up until the time of the divorce trial. Indeed, Silverstein’s failure to disclose to McCourt his discovery of the error in Exhibit A will clearly be at issue, and that could in turn affect the validity of the advice he gave to McCourt after 2004. At oral argument, McCourt’s counsel compared McCourt to the tort victim being served with a lawsuit while he is in the hospital. That may be a stretch, but clearly, now is not the time McCourt would prefer to be litigating this claim in Massachusetts.
There are other reasons supporting dismissal of this action. First, the alleged negligence that is the subject of this case occurred entirely in the past. In contrast, the purpose of declaratory judgment is generally to resolve uncertainties as to legal rights and obligations before they have been repudiated. As one court put it, “its purpose is to permit one who is walking in the dark to ascertain where he is and where he is going, to turn on the light before he steps rather than after he has stepped in a hole.” Farm & Home Life Ins. Co. v. Skelton, 510 S.E.2d 76, 77 (Ga.Ct.App. 1998). Here, this action appears to be motivated more by a desire to gain some strategic advantage, not to avoid or minimize any possible future harm to anyone. Second, a declaratory judgment action requires that there be an actual controversy which is ripe for adjudication. Apart from the allegation that McCourt has threatened to sue Bingham, there are no facts stated in the Complaint to demonstrate that a malpractice suit against Bingham is imminent and inevitable. Indeed, around the same time that it filed the instant action, McCutcheon filed a demand to arbitrate its claim that McCourt has waived any malpractice claim based on a settlement agreement entered into in 2006. Thus, at the same time it is arguing to this Court that an actual controversy exists, it is arguing in a different forum that McCourt gave up the very claim which creates the controversy necessaiy to give this Court jurisdiction.
CONCLUSION AND ORDER
For all the foregoing reasons and for other reasons set forth in the defendant’s Memoranda of Law, the Defendant’s Motion to Dismiss is ALLOWED, and it is hereby ORDERED that the the Complaint be DISMISSED.

The Complaint does not expressly state what the discrepancy between the different versions of Exhibit A was. That it *49 pertained to the ownership of the Dodgers is clearly implied, however, and was not disputed at the oral argument on this Motion.

Plaintiff argues that the statute requires that the Court wait until trial or even after trial before exercising its discretion to deny relief. This argument is entirely unpersuasive. Section 1 of the Act expressly states that declaratoiy relief is available only in “appropriate proceedings.” See also City of Boston v. Keene Corp., 406 Mass. 301, 305 (1989) (stating that “whether a case is appropriate for declaratoiy relief’ is within a judge’s discretion). Moreover, this Court’s decision is based on the allegations of the Complaint. No amount of discoveiy will change my conclusions.